```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOEL M. LEVY and JUDITH W. LYNN,                            :
                                                            :      13 Civ. 2861 (JPO)
                                       Plaintiffs,          :
                                                            :      OPINION AND ORDER
                  -v-                                       :      ADOPTING REPORT
                                                            :      AND
YOUNG ADULT INSTITUTE, INC., et al.,                        :      RECOMMENDATION
                                                            :
                                       Defendants.          :
-------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

      Plaintiffs Joel M. Levy and his wife Judith W. Lynn are a participant and a beneficiary in a retirement plan provided by Levy's former employer, Young Adult Institute, Inc. ("YAI"). The retirement plan includes a pension plan and trust and a life insurance plan and trust. Defendants allegedly violated Plaintiffs' vested rights in these plans.[1]  Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and state law claims for breach of contract, unjust enrichment, and breach of fiduciary duty. Defendants have moved to dismiss all fifteen counts in the complaint.

      The motion to dismiss was referred to Magistrate Judge Sarah Netburn for a Report and Recommendation (the "Report"). The Court has reviewed the Report, Defendants' objections regarding the recommended denial of the motion to dismiss Count VI, and Plaintiffs' objections regarding the recommended dismissal of Counts XII-XV based on preemption. For the reasons that follow, the Report is adopted as to Counts I-XIV and not adopted as to Count XV, and the

---

[1] Defendants include: (1) YAI in its individual capacity and in its capacity as administrator of the retirement plan; (2) YAI's Board of Trustees, as administrator; (3) the Pension Retirement Committee of YAI's Board of Trustees, as administrator; (4) John Does 1-3, as Trustees; (5) the pension plan and trust; (6) the life insurance plan and trust; and (7) Eliot P. Green, a lawyer on YAI's board.

underlying motion to dismiss is granted in part (as to Counts V, and IX-XIV) and denied in part (as to Counts I-IV, VI-VIII, and XV).

## I. Background

### A. Underlying Facts

Plaintiffs' allegations are assumed to be true for purposes of this motion. Familiarity with the facts, which are summarized aptly and without objection in the Report, is assumed. The Court provides only a brief review of facts relevant to the objections.

Levy worked as an executive for YAI from around 1969 until his retirement on June 30, 2009. On July 1, 1985, YAI executed a Supplemental Pension Plan ("pension plan") with Levy as a participant and Lynn as a beneficiary. The plan vested in 1989 and conferred the following benefits, among others:

- An annuity valued at approximately $900,000 to be paid in monthly installments of $75,000 over Levy's predicted lifetime, with payments going to his wife and then children in the event of his premature death;
- The right to have a trustee acting at all times; and
- Immunity from retroactive amendments that would reduce the benefits.

In September 2008, YAI received Levy's permission to cap the annuity at $625,813 and reduce monthly payments to $52,151. Levy signed an Employment Agreement accepting this reduction on the conditions that (1) other benefits would remain unchanged, and (2) YAI would purchase, by June 30, 2010, a commercial annuity that mimics the pension plan's distribution features. Then, in October 2008, YAI amended the pension plan to reflect the changes in the Employment Agreement and to further reduce Plaintiffs' overall benefit, despite contrary promises in the Employee Agreement.

Levy retired in June 2009 and began to receive benefits. Two months later, in August 2009, YAI withheld Levy's benefits until Levy and Lynn both signed an Acknowledgement and

Release which further reduced Lynn's surviving spouse benefits and released YAI from liability for changes in the October 2008 amended pension plan. In 2010, YAI began to pay Levy according to the terms of the amended pension plan. However, these payments were suspended again in August 2011. Furthermore, as of June 2013, YAI had not fulfilled its duty under the Employment Agreement to purchase a commercial annuity to fund the pension plan.

In addition to the pension plan described above, YAI also provided Levy a life insurance plan with policies purchased from The Northwestern Mutual Life Insurance Company ("Northwestern") with a collective face value of $3,172,762. Since 2003, YAI has held the Northwestern policies in an irrevocable life insurance trust. Then, in 2011, YAI assigned proceeds from the Northwestern policy as collateral on a debt to a third party. Levy permitted this assignment on the condition that YAI purchase and maintain a separate insurance policy with the same face value during the period of encumbrance. YAI purchased policies from Lincoln Financial Group ("Lincoln"), but allegedly failed to maintain the Lincoln policy past April 2013. The parties contest when the Northwestern policies became unencumbered and therefore, when YAI's obligation to maintain the Lincoln policies ceased. The parties also contest whether proceeds from the Northwestern policies would be applied toward the $625,813 cap imposed under the Employee Agreement.

### B. Plaintiffs' Claims

Based on these facts, Plaintiffs assert the following claims: Counts I-VII are brought under ERISA to clarify Plaintiffs' rights under and seek benefits under the pension plan; Counts VIII-XI are brought under ERISA to clarify Levy's rights under and seek benefits under the life insurance plan; Counts XII and XIII are brought under state contract law for breaches of the Employment Agreement; Count XIV is brought under state unjust enrichment law and repleads

the facts from Counts XII and XIII; finally, Count XV is brought under state law and asserts a breach of fiduciary duty.

## II.   Review of the Report

Magistrate Judge Netburn provided the following recommendations in her Report: (1) dismiss Counts V, IX, and X for lack of subject matter jurisdiction; (2) dismiss Counts XII-XV (collectively, the "state law claims") as preempted; (3) dismiss Count XI for failure to state a claim; (4) deny dismissal of Counts I-IV, VI-VIII, and XI to the extent that claims are asserted against YAI in its capacity as a plan administrator, but dismiss those claims to the extent that they are against YAI in its individual capacity.

Plaintiffs object to the dismissal of the state law claims.  Defendants object to the retention of Count VI, which seeks an accounting of assets in the pension plan.  No further objections were filed.

Absent clear error, the District Court may adopt the Magistrate Judge's reasoning on issues to which objections were not raised.  *See* Fed. R. Civ. P. 72(b), Adv. Comm. Notes (1983) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Borcsok v. Early*, 299 F. App'x 76, 77 (2d Cir. 2008) ("The District Court then reviewed the magistrate judge's report and recommendation for clear error and, finding none, adopted the report . . . ."); *cf.* § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . [where] the magistrate judge's order is clearly erroneous or contrary to law.").

The Court finds no errors in the thorough and carefully reasoned Report and adopts all portions of the Report that were not objected to by either party.  Accordingly, (1) Counts V, IX,

and X are dismissed for lack of subject matter jurisdiction; (2) Count XI is dismissed for failure to state a claim; and (4) Counts I-IV, VII, VIII, and XI are not dismissed.

Where there are objections to a Magistrate Judge's Report, the District Court reviews the issues de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Therefore, the Court turns to the motion to dismiss Count VI and the state law claims.

### III. Defendants' Objection to Denial of Motion to Dismiss Count VI[2]

#### A. Standard for Motion to Dismiss

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). At this stage, a court discounts conclusory pleadings, but accepts all factual "allegations in the complaint as true and draw[s] all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation and quotations omitted).

---

[2] As to this objection, the Court has reviewed the Defendants' objection (Dkt. No. 62) and Plaintiffs' response (Dkt. No. 63) only. The Court is persuaded by Plaintiffs' letter motion (Dkt. No. 68) to strike Defendants' reply memorandum (Dkt. No. 67).

B.   **Discussion**

In Count VI, Plaintiffs allege that YAI "may have misappropriated the assets of the [pension plan] to pay a . . . creditor" and seek "records and accounts of all transactions involving the [pension plan]." (Compl. at 43). ERISA permits plaintiffs to seek equitable relief, including an accounting. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); ABA Section of Labor and Employment Law, Employee Benefits Law (Jeffrey Lewis et al. eds., 3d ed. 2012) ("The following types of relief have been considered 'equitable': . . . an accounting . . . ."); Report at 35 (citing cases). The Report concludes that Plaintiffs have alleged sufficient facts to warrant an equitable accounting.

Defendants raise two objections: first, they argue that Plaintiffs fail to plead sufficient facts to warrant an equitable accounting; and second, they argue that because executive pension plans are subject to lower reporting requirements, they should be held exempt from equitable remedies that impose additional reporting requirements.

1.   **Allegations that Trigger Equitable Remedies**

Plaintiffs qualify for equitable relief if they allege a violation of the terms of a benefit plan. ERISA §§ 502(a)(3), 29 U.S.C. §§ 1132(a)(3). Here, Plaintiffs allege that all of the pension plan's trustees retired around June 2011, leaving no trustees responsible for managing the plan. No trustees were appointed until after the commencement of this litigation in 2013.[3] It is plausible that, as Plaintiffs allege, an impermissible combination of Defendants controlled the plan's assets during the interregnum. Furthermore, Plaintiffs' allegation that these assets were misappropriated to pay a non-party creditor are buttressed by Plaintiffs' allegations that the Northwestern insurance plans were assigned to a non-party creditor and that Defendants failed to

---

[3] The Court must take judicial notice of the recent trustee appointments to eliminate Counts V and IX, which seek appointment of trustees. The parties did not object to the Report's consideration of these appointments.

maintain alternative insurance plans during that period of encumbrance.  While these allegations are made upon information and belief, the court must "pragmatically evaluate the complaint in the context of the plaintiff's informational limitations."[4]  *Burgos v. Satiety, Inc.*, 10 Civ. 2680 (JG)(RLM), 2011 WL 1327684, at *4 (E.D.N.Y. 2011); *see also Boykin v. Keycorp*, 521 F.3d 202, 215-16 (2d Cir. 2008) (allowing allegations made upon information and belief where records were solely within defendant's control).  Plaintiffs' allegations, taken as a whole, put Defendants on notice of the claims against them and provide as much detail as Plaintiffs can reasonably be expected to have in light of their limited access to Defendants' records.

### 2. Exemption for Executive Pension Plans

It is true that ERISA creates a distinction between the reporting requirements for typical plans and for certain executive compensation plans, termed "top hat plans."[5]  ERISA § 110; 29 U.S.C. § 1030 (authorizing the Secretary of Labor to prescribe alternative forms of compliance with reporting requirements for qualifying plans); 29 C.F.R. § 2520.104-23.  However, equitable remedies frequently impose obligations upon defendants that are separate from and extend beyond what laws already require.  Within ERISA's statutory framework, equitable remedies are set forth in § 502(a)(3), a provision that is separate and distinct from the

---

[4] The Court is particularly cognizant of Plaintiffs' informational limitations here, because Defendants seek dismissal of Plaintiffs' claim for an accounting, which requests the very details that Defendants would have them allege in order to survive a motion to dismiss.  Plaintiffs cannot allege particular details without an accounting.  If allegations of particular details were a prerequisite to obtaining an accounting, pleading would be impossible and the details inaccessible.

[5] The pension plan is a "top hat" benefit plan, meaning that it is an "unfunded . . . pension plan[] maintained by an employer for a select group of management or highly compensated employees." 29 C.F.R. § 2520.104-23(a).  As such, the pension plan is exempt from ERISA's standard reporting and disclosure requirements and is subject to an alternative reporting framework.  § 2520.104-23.

provisions describing reporting requirements, ERISA §§ 101-111; 29 U.S.C. §§ 1021-31. In contrast to the reporting requirements, ERISA's equitable remedies provision makes no distinction between top hat plans and standard plans. *Cf. Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012) (reasoning that because ERISA's express preemption provision does not distinguish between standard and top hat plans, courts should apply a uniform preemption analysis to cases involving both types of plans). Therefore, legislative distinctions that govern the reporting standards do not control courts' discretion to award equitable relief.

Under § 502(a)(5), courts are directed to use their equitable power to "redress . . . violations." In this case, the equitable remedy for Count VI may resemble the legal reporting requirements for a standard pension plan, but that matters little. The equitable remedy could exceed the legal reporting requirements or it could impose a requirement not contemplated by the law. The legislative and regulatory scheme describes the requirements for plans under standard conditions: if no ERISA violations have been found, top hat plans enjoy favorable legal reporting requirements. However, if a fact-finder ultimately determines that Defendants violated Plaintiffs' rights, then Defendants may be subject to a heightened reporting burden, even if the remedy interferes with privileges that are enjoyed by non-violating top hat plans. Defendants' argument that equitable accounting would provide an end-run around lowered reporting requirements for top hat plans is valid, but only to the extent that all judicial remedies provide an "end-run" around the rights provided to those who are not found liable of legally recognized misconduct. Whether those findings will be made has yet to be determined, but it is inappropriate to dismiss Plaintiffs' claim at this point.

## IV.    Plaintiffs' Objection to Dismissal of Counts XII-XV Based on Preemption

### A.    Legal Framework for ERISA Preemption

"Under the Supreme Court's test in *Davila,* ERISA preempts a [state] cause of action where: (1) an individual . . . could have brought his or her claim under ERISA § 502(a)(1)(B);

8

and (2) no other independent legal duty is implicated by a defendant's actions. *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012), as amended (Mar. 9, 2012) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)) (internal quotation marks omitted and alterations adopted); *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327-28 (2d Cir. 2011) ("[ERISA] . . . completely preempts any state law cause of action that duplicates, supplements, or supplants an ERISA remedy.") (internal quotations omitted). The parties agree that the first prong of *Davila* is satisfied and thus the state court claims are preempted unless they arise from a sufficiently independent state law duty.[6] *See Montefiore*, 642 F.3d at 332 ("[A] claim is completely preempted only if 'there is no other independent legal duty that is implicated . . . .' The key words here are 'other' and 'independent.'" (quoting *Davila*, 542 U.S. at 210)).

### 1. Sufficiently Independent Contractual Duties

Under case law in this Circuit, a duty is sufficiently independent of ERISA if it creates obligations that did not exist under an ERISA-regulated plan and the requested remedy would not "tend to control or supersede central ERISA functions. . . [such as] the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits." *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56, 59 (2d Cir. 2010) (citing *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003)). Preemption is more likely to occur when a state cause of action would affect the relationship among "core ERISA entities: beneficiaries, participants,

---

[6] The parties reach this conclusion through different means. Defendants agree with the Report that the "independent legal duty" determination is part of the inquiry for complete preemption under ERISA § 502. This view is supported by *Davila* and its progeny. Plaintiffs argue that the "independent legal duty" determination is part of the inquiry for express preemption of state causes of action under ERISA § 514, 29 U.S.C. § 1144(a). The Court need not address the viability of Plaintiffs' theory. It is sufficient that the parties agree that absent a finding of an "independent legal duty," preemption is required.

administrators, employers, trustees and other fiduciaries, and the plan itself." *Gerosa*, 329 F.3d at 324.

Plaintiffs base their objections on four cases in which courts found an independent contractual duty that was not preempted by ERISA. *Cotter v. Milly LLC* presents the simplest case. 09 Civ. 04639 (PGG), 2010 WL 286614 (S.D.N.Y. 2010). There, the plaintiff was allowed to proceed on a breach of contract claim because his Employment Agreement did "not refer to any actual [ERISA-regulated] plan." *Id.* at *7. The court held, uncontroversially, that the mere mention of benefits did "not transform the Employment Agreement into an ERISA plan." *Id.* (citation omitted). In the absence of an ERISA plan, the contract created independent duties. The remaining cases offer more nuanced variations on this simple theme.

In *Cherniak*, the plaintiff summarily alleged the existence of an ERISA plan, but the court could not determine from the pleadings whether the benefits plan was ERISA-regulated. *Cherniak v. Solow Realty & Dev. Co., LLC*, No. 12 Civ. 5564 (HB), 2013 WL 3757082 (S.D.N.Y. 2013). Because the court found no ERISA-regulated plan, ERISA did not preempt state law claims. Additionally, the court retained claims against an individual defendant who had personally promised to pay the plaintiff a certain amount if he was fired without cause. Even if an ERISA plan existed, the individual defendant's potential liability stemmed from a personal promise "rather than from an ERISA benefits plan." *Id.* at *2. The defendant made the promise in his individual capacity and was not acting as a core ERISA administrator. *Id.* (citation omitted). Under such circumstances, an award of damages would "not require a court to review the propriety of . . . benefits under such a plan." *Id.* (citation omitted).

In *Cantor*, independent rights arose from a contractual promise to pay additional severance benefits for twelve months after the expiration of benefits under the ERISA-regulated

10

plan. *Cantor v. Am. Banknote Corp.*, 06 Civ. 1392 (PAC), 2007 WL 3084966 (S.D.N.Y. 2007). Although an ERISA plan did exist in the background, the ERISA plan did not address the benefits created by the contract. Therefore, as in *Cotter* and *Cherniak*, the contract created benefits in a space that was not occupied by an ERISA plan. The plaintiff explicitly acknowledged that "denial of benefits was proper" under the terms of the ERISA plan. *Id.*, at *6. At the time the agreement was signed, the defendant no longer occupied the core protected status of an ERISA administrator, and owed no liability under ERISA. *Id.*; *see also Kelly v. Deutsche Bank Sec. Corp.*, 09 Civ. 5378 (JS)(AKT), 2010 WL 2292388, at *2 (E.D.N.Y. 2010) (discussing *Cantor* and concluding that because the defendant's liability "stemmed from the independent obligations it undertook in signing the settlement agreement," the contractual obligations were not preempted).

Finally, the closest case is presented in *Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56 (2d Cir. 2010). There, the Second Circuit found a sufficiently independent duty where an employer promised to extend ERISA-like benefits to the plaintiff even after he stopped being a participant in the ERISA-regulated plan. When the plaintiff stopped being a participant, the terms of the ERISA plan no longer applied to him and therefore the contract created new duties that merely referenced the ERISA plan's terms. In permitting the contract claim to move forward, the Second Circuit emphasized that the plaintiff's claims "reference . . . ERISA plans solely as a means of describing the consideration underlying an alleged contract *that itself is separate from the terms of any plan*; [the claims] will not affect the referenced plans, particularly not in a way that threatens ERISA's goal of uniformity." *Id.* at 62 (emphasis added). The court further elaborated:

> Should Stevenson ultimately succeed in his state court action . . . the actual administration and funding of [ERISA-regulated] plans would be unaffected . . . .

11

>   Stevenson's suit neither interferes with the relationships among core ERISA entities nor tends to control or supersede their functions . . . .

*Id*. at 61.  These statements clarify the relevant inquiries for determining whether a duty is sufficiently independent from an ERISA plan.

In a distinguishable set of cases, courts held state law claims preempted where they were not sufficiently independent.  The case that is most relevant here is *Arditi v. Lighthouse Int'l*, 676 F.3d 294 (2d Cir. 2012), *as amended* (Mar. 9, 2012).  The plaintiff in *Arditi* brought state claims under a collateral employment agreement that promised "an unreduced pension benefit upon retirement."  *Id.* at 300 (internal quotation and alteration omitted).  However, a pre-existing ERISA plan already included the promise to provide "an unreduced benefit."  *Id.* at 297 (citation omitted).  The Second Circuit found that the plaintiff's right to an unreduced benefit "arose from the Plan and not the Agreement" and therefore, the state law claim was preempted.

Additionally, in *Montefiore*, the plaintiff, a medical benefits provider, asserted that an ERISA plan assumed an independent state law duty to pay for certain treatments because, prior to each treatment, the parties spoke by telephone and the ERISA plan confirmed that the treatment was covered.  *Montefiore*, 642 F.3d at 332.  The provider sued for breach of contract and, in the alternative, unjust enrichment.  The court held that no independent duty arose from these promises because the pre-approval calls were required by the ERISA plan.  Therefore, even if there were subsequent promises confirming a preexisting duty, the duties arising from those calls were "inextricably intertwined with the interpretation of Plan coverage and benefits."  *Id.*

Together, these cases establish the principle that an independent duty arises where no ERISA plan confers the contested benefits and duties, and thus relief would not interfere with the interpretation or administration of any ERISA plan.

##### 2. Sufficiently Independent Fiduciary Duties

Shifting from contractual duties to fiduciary duties, in *Gerosa*, a case where an ERISA plan sued its actuary for negligence, the Second Circuit observed that "courts routinely find that garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted." 329 F.3d at 324 (citations omitted). Because "state law has traditionally prescribed the standards of professional liability" and state actions for breach of fiduciary duties "merely placed the plaintiff . . . in the same position as any other state economic actor," the court found "no reason to believe that Congress would have wanted to preempt the claim." *Id.* (citations and quotations omitted). Furthermore, the suit was not preempted because it was between an ERISA plan and its agent; therefore, it did not involve any rights arising from the ERISA plan or affect the relationship among the plan and other core ERISA entities. *Id.* at 324.

With these precedents in mind, the Court examines the state law claims.

#### B. Discussion

Count XII asserts a claim based on the Employment Agreement's promise to preserve the benefits provided under the original pension plan. This promise closely tracks the promise to provide "an unreduced benefit" in *Arditi*, and is not sufficiently independent to avoid preemption. 676 F.3d at 300. As the Report correctly observed, "the Employment Agreement expressly acknowledges that Levy's benefits flow from his participation in the [original pension plan]." (Report at 23.) On that basis, this case is distinguishable from cases where contractual rights were sufficiently independent from ERISA benefits to avoid preemption.

Count XIII asserts an independent duty based on YAI's promise, in the Employment Agreement, to purchase commercial annuities to fund the pension plan. This promise creates a

13

duty that is separate from the duties promised under the original pension plan. However, this promise is not sufficiently independent because it necessitates interference with the core administration of the ERISA plan. If YAI had promised to purchase annuities separate from the pension plan, this case would be a closer call. Instead, the promise modified the terms for administering an ERISA-regulated pension plan. The remedy would require interference with the administrative functions of core ERISA entities, and therefore the claim is preempted.

Count XIV asserts a claim for unjust enrichment as an alternative to Counts XII and XIII in the event that the Employment Agreement is invalid. Both parties agree that Count XIV lives or dies by the same analysis that controls the breach of contract claims. For the reasons discussed above, this claim is also preempted.

Finally, Count XV asserts a breach of fiduciary duty by Green, a lawyer on the YAI Board of Trustees, for his role in causing Levy and Lynn to sign the Acknowledgment and Release without advice from independent counsel. Plaintiffs assert that Green owed a fiduciary duty to Lynn and (more plausibly) to Levy based on a "long-standing working relationship . . . [and] special bond of trust" as well as Green's general legal expertise and his counsel on this particular matter (Compl. at 57-58). Although Green is a core ERISA administrator, the pleadings suggest that he developed a fiduciary duty to Levy and Lynn in his individual capacity that is separate from the fiduciary duty that he owed to them as a plan administrator. *Cf. Cantor*, 2007 WL 3084966; *see also Salomon Bros., Inc. v. Huitong Int'l Trust & Inv. Corp.*, 94 Civ. 8559 (LAP), 1996 WL 675795 (S.D.N.Y. 1996) ("The existence, as well as the scope of a fiduciary relationship depends on the factual nature of the relationship . . . [and is] not susceptible to resolution on a motion to dismiss.") (citation and quotations omitted). Consider the following hypothetical: if Green had assaulted Plaintiffs at a meeting about the

Acknowledgement and Release, then Green's status as a plan administrator would not preclude Plaintiffs from suing for an intentional tort. The same would be true if Green used his fiduciary relationship to trick Plaintiffs into assigning him their income under the plan. Although Green was a plan administrator, he also may have professional and fiduciary duties in his individual capacity. Such duties are traditionally regulated under state law. *Gerosa*, 329 F.3d at 324. If a personal fiduciary duty existed, then the holding in *Gerosa* can be extended to find that Green's alleged breach of that duty was independent of the benefits conferred under the pension plan. Furthermore, Plaintiffs seek damages and attorney's fees. Those remedies can be awarded without reference to the terms of any ERISA-regulated plan. Therefore, this claim cannot be deemed preempted at the pleadings stage and will not be dismissed.[7]

---

[7] Count XV is also not expressly preempted under ERISA § 514 (29 U.S.C. § 1144) because the breach of fiduciary duty claim is a neutral state cause of action that is brought to enforce an independently created and historically state-regulated duty. It does not impact the cost, administration, or operation of any ERISA plan; it therefore does not "relate to" any ERISA plan in any way that would suggest a congressional intent to preempt this kind of claim. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995).

**V.     Conclusion**

For the foregoing reasons, the Report and Recommendation (Dkt. No. 58) is ADOPTED as to Counts I-XIV.  Accordingly, the motion to dismiss is GRANTED as to Counts V, IX, and X (for lack of subject matter jurisdiction); Counts XII-XIV (based on ERISA preemption); and Count XI (for failure to state a claim); and is DENIED as to Counts I-IV and VI-VIII.  Plaintiffs' objection is sustained as to Count XV and, accordingly, the motion to dismiss is DENIED as to Count XV.  In all other respects, the parties' objections are overruled.

The Clerk of the Court is directed to close the motion at docket number 20.

SO ORDERED.

Dated: March 31, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge