UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOEL M. LEVY and JUDITH W. LYNN,

                       **Plaintiffs,**

        -against-

YOUNG ADULT INSTITUTE, INC., et al.,

                      **Defendants.**

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 11/21/2014 __

**13-CV-02861 (JPO)(SN)**

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiffs Joel M. Levy and his spouse Judith W. Lynn (collectively, the "plaintiffs"),

bring this action pursuant to: (1) the enforcement provisions of the Employee Retirement Income

Security Act of 1974 ("ERISA" or the "Act") to recover and to clarify benefits due to them and

to obtain appropriate equitable relief under the terms of a Supplemental Pension Plan and Trust

for Certain Management Employees of Young Adult Institute (the "SERP" or the "Plan") and

under the terms of a Life Insurance Plan and Trust for Certain Management Employees of Young

Adult Institute (the "Life Insurance Plan and Trust"); (2) case law from the Court of Appeals for

the Second Circuit applying the principles of promissory estoppel to ERISA claims to enforce

promises not to reduce certain benefits under the SERP; and (3) a state law claim for damages

for breach of fiduciary duty. The plaintiffs now seek to amend the Third Amended Complaint to

add three claims for equitable relief (Proposed Counts VI, VII, and VIII) under § 502(a)(3)(B) of

ERISA: (1) an order of restitution, disgorgement of profits, and the imposition of a constructive

trust or equitable lien; (2) a derivative claim for restitution, disgorgement of profits, and the

imposition of a constructive trust or equitable lien; and (3) specific performance to prevent alleged misuse of trust assets.

For the following reasons, plaintiffs' motion for leave to amend the Third Amended Complaint is DENIED.

## BACKGROUND[1]

### I.    Factual Background

The Young Adult Institute, Inc. ("YAI") is a New York non-profit organization that serves people with developmental disabilities. Levy worked for YAI for over 40 years before his retirement, first as Executive Director and later as Chief Executive Officer. Among the benefits YAI agreed to provide to Levy were: (1) a Supplemental Pension Plan for Certain Management Employees of Young Adult Institute, dated July 1, 1985 (the "Original SERP"); and (2) four life insurance policies purchased from the Northwestern Mutual Life Insurance Company with a collective face value of $3,172,762 (the "Northwestern Mutual Policies"), pursuant to the Life Insurance Plan. YAI also created a trust as a funding medium for the SERP Plan and Trust (the "SERP Trust" or the "Trust").

Under the Original SERP, upon his retirement from YAI, Levy was entitled to receive an annual annuity calculated pursuant to a formula (the "Benefit Formula"), which originally afforded him an annual benefit of approximately $900,000 for the rest of his lifetime, payable in monthly installments of $75,000. The Original SERP could be amended by resolution of the Board or the Pension Retirement Committee, but prohibited an amendment that would reduce a vested benefit. YAI claims that it later amended the SERP to reduce the plaintiffs' benefits, first in a 2008 employment agreement and amended SERP (the "2008 Amendment"). In opposition to the motion to amend, YAI contends that it reduced the plaintiffs' benefits a second time in a 2012 amendment to

---

[1] The Court assumes familiarity with the facts and procedural history of this case, and recites only those facts relevant to the resolution of this motion.

the SERP (the "2012 Amendment"). The 2012 Amendment had two effects, according to YAI. First, it allowed YAI to distribute Trust assets to satisfy a settlement with state and federal officials in connection with a suit brought under the False Claims Act. Second, it capped the benefits of any one SERP participant to those determined by Mercer LLC, the executive compensation consultant retained by YAI's counsel. YAI also claims to have passed a board resolution in 2011 that, reflecting the SERP as amended, authorized the payment of legal expenses relating to the SERP to be paid from the SERP Trust.

## II.    Procedural History

The plaintiffs filed the Complaint on April 30, 2013, and the First Amended Complaint on June 26, 2013. On August 6, 2013, the defendants moved to dismiss the First Amended Complaint, and on August 29, 2013, the Honorable J. Paul Oetken referred the case to my docket for general pretrial supervision and dispositive motions. On January 27, 2014, the Court recommended that the motion to dismiss be granted as to all state law claims, the ERISA claim for breach of fiduciary duty, and the claims requesting specific performance with regard to the trustees of the SERP, the Life Insurance Plan and Trust, and the Northwestern Mutual Life Insurance Policies. The Court recommended that the motion be denied as to all other claims. On March 31, 2014, Judge Oetken adopted the Court's recommendation as to all counts, except the state law claim for breach of fiduciary duty by Green, for which Judge Oetken sustained the plaintiffs' objections and denied the motion to dismiss.

On April 14, 2014, the plaintiffs filed the Second Amended Complaint, and the defendants answered on May 19, 2014. On June 9, 2014, the Court signed a stipulation and order directing the plaintiffs to file a Third Amended Complaint within 10 days, which remedied the issues raised in the defendants' previously filed motion to strike. On June 19, 2014, the plaintiffs filed the Third Amended Complaint, and on June 30, 2014, the defendants answered.

On July 11, 2014, the plaintiffs filed a motion to amend the Third Amended Complaint. In support of its motion, the plaintiffs submitted: (1) a Memorandum of Law; and (2) the Declaration of Michael Rakower (the "First Rakower Declaration"), attaching Exhibits A through J, which included the proposed Fourth Amended Complaint (Exhibit I).

On August, 13, 2014, in opposition to the plaintiffs' motion, the defendants submitted: (1) a Memorandum of Law in Opposition; and (2) the Declaration of Yue-Han Chow (the "Chow Declaration"), attaching Exhibits A through I.

On August 27, 2014, in their reply, the plaintiffs submitted: (1) a Memorandum of Law in Further Support; and (2) the Declaration of Michael Rakower (the "Second Rakower Declaration"), attaching Exhibits 1 through 3.

## III.    The Proposed Counts

The plaintiffs' existing Counts I and II of the Third Amended Complaint plead claims for legal relief under ERISA § 502(a)(1)(B), seeking to enforce the terms of the Original SERP; the plaintiffs contest the validity of amendments that purported to alter or divest the plaintiffs of certain benefits. Count I seeks to recover benefits due to Levy under the Original SERP, namely money damages for the difference between payments received and what is owed him under the Original SERP. Count II seeks to clarify and determine what rights to future benefits are due to Lynn under the Original SERP, and requests in the alternative that she be awarded a lump sum of the present value of her vested benefits.

Counts VI, VII and VIII in the proposed Fourth Amended Complaint, meanwhile, are, in essence, claims to enforce certain alleged rights under the terms of the Original SERP and to clarify rights to future benefits under the terms of the SERP. The plaintiffs propose to bring all three new counts under ERISA § 502(a)(3). Count VI is an "equitable claim of restitution and

4

disgorgement of profits and request for imposition of a constructive trust or equitable lien";
Count VII is a "derivative equitable claim of restitution and disgorgement of profits and request
for imposition of a constructive trust or equitable lien"; and Count VIII seeks "specific
performance to prevent further misuse of SERP Plan and Trust assets." See First Rakower Decl.
Ex. I. (the "proposed Fourth Amended Complaint") ¶¶ 43, 47, 51. The plaintiffs contend that
these new equitable claims are necessary to protect their interests. The claims arise out of recent
disclosures that $11.2 million from the SERP Trust has been used in full or in part for purposes
other than the exclusive benefit of the participants or beneficiaries.

## DISCUSSION

## I.   Leave to Amend Standard

A party may amend its pleading "as a matter of course" within 21 days of service of the
complaint or within 21 days of service of either a responsive pleading or certain motions under
Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(1). After that time, an
amendment requires either the consent of the opposing parties or leave of the court. Fed. R. Civ.
P. 15(a)(2). Although the "court should freely give leave when justice so requires," Fed. R. Civ.
P. 15(a)(2), it may "deny leave for good reason, including futility, bad faith, undue delay, or
undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009)
(quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also
Foman v. Davis, 371 U.S. 178, 182 (1962) (discussing the circumstances in which leave may be
denied).

When a party files a motion to amend after the pleading deadline set in the scheduling
order, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under
Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of

good cause.'" Holmes, 568 F.3d at 334-35 (quoting Grochowski v. Phoenix Constr., 318 F.3d 80,

86 (2d Cir. 2003)); see Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good

cause and with the judge's consent."). It is within the Court's discretion to apply the good cause

standard after the deadline to amend. See Parker v. Columbia Pictures Industries, 204 F.3d 326,

341 (2d Cir. 2000) (holding that "a district court does not abuse its discretion in denying leave to

amend the pleadings after the deadline set in the scheduling order where the moving party has

failed to establish good cause"); see also Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229,

243-44 (2d Cir. 2007) ("Rule 16(b), in allowing modifications of scheduling orders only for good

cause, provides the district courts discretion to ensure that limits on time to amend pleadings do

not result in prejudice or hardship to either side.").

      To show good cause, a movant must demonstrate diligence before filing her motion, such

that despite the movant's effort, the deadline to amend the pleadings could not have been

reasonably met. Parker, 204 F.3d at 340 (granting leave when "deadline cannot reasonably be

met despite the diligence of the party seeking the extension." (internal quotation marks omitted)).

While the movant's "diligence" is the "primary consideration," the Court may also inquire

whether the amendment will significantly prejudice the nonmoving party. Kassner, 496 F.3d at

244; see also Werking v. Andrews, 526 F. App'x 94, 96 (2d Cir. 2013) ("We will find 'good

cause' where the moving party has demonstrated 'diligence,' and the amendment would not

significantly prejudice the non-moving party." (citations omitted)); Salomon v. Adderley

Industries Inc., 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013) (considering undue delay and undue

prejudice in Rule 16(b) good cause analysis). "A party fails to show good cause when the

proposed amendment rests on information 'that the party knew, or should have known, in

advance of the deadline.'" Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp.

2d 453, 457 (S.D.N.Y. 2012) (citing Sokol Holdings, Inc. v. BMD Munai, Inc., 05 Civ. 3749
(KMW)(DF), 2009 WL 2524611, at *7-8 (S.D.N.Y. Aug. 14, 2009) (collecting cases)).

The burden of demonstrating good cause rests with the movant. Ritchie Risk–Linked
Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 09 Civ. 1086 (VM)(DF), 2012 WL
2161022, at *3 (S.D.N.Y. June 5, 2012). The burden of demonstrating prejudice rests with
the non-movant. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).

### A.  Diligence and undue delay

Diligence is the primary consideration in the good cause analysis. Kassner, 496 F.3d at
244. While the "primary consideration is whether the moving party can demonstrate diligence,"
id. at 244, the Court may also consider delay in the good cause analysis. See Ouedraogo v. A–1
Int'l Courier Serv., Inc., 12 Civ. 5651 (AJN), 2013 WL 3466810, at *5 (S.D.N.Y. July 8, 2013)
(weighing, but rejecting, delay-based counter argument after plaintiff's affirmative showing of
good cause). Delay alone will not negate a plaintiff's showing of good cause because "[m]ere
delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district
court to deny the right to amend." Id. (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d
843, 856 (2d Cir. 1981)).

### B.  Futility

Where a party opposes amendment of a complaint based on futility, the Court may
review the proposed pleading for adequacy. "The adequacy of the proposed amended
complaint . . . is to be judged by the same standards as those governing the adequacy of a filed
pleading." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). "An amendment
to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant
to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88

(2d Cir. 2002) (citing <u>Ricciuti</u>, 941 F.2d at 123); <u>see also</u> <u>Anderson News, L.L.C. v. Am. Media,</u> <u>Inc.</u>, 680 F.3d 162, 185 (2d Cir. 2012); <u>Leary v. Civil Serv. Emps. Ass'n</u>, 11 Civ. 716 (CS), 2012 WL 1622611, at *12 (S.D.N.Y. May 9, 2012) ("Where the 'problem with [a complaint] is substantive [and] better pleading will not cure it,' leave to amend should be denied as futile." (quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)).

### C. Prejudice

An amendment may be prejudicial if it would (1) require the defendant to expend "significant additional resources" to conduct discovery, or would (2) "significantly delay" the resolution of the dispute. <u>Block</u>, 988 F.2d at 350. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." <u>Id.</u>

## II.   Equitable Relief Under ERISA § 502(a)(3)

Though diligence is the "primary consideration" of the good cause analysis, <u>Kassner</u>, 496 F.3d at 244, the essential dispute on this motion to amend is the validity of Counts VI, VII and VIII of the proposed Fourth Amended Complaint. As the futility of a proposed complaint may dispose of the motion by itself, <u>see</u> <u>Ricciuti</u>, 941 F.2d, 123; <u>Dougherty</u>, 282 F.3d at 88, this Court will first consider the adequacy of the plaintiffs' proposed counts.

All three claims take the form of equitable relief under ERISA § 502(a)(3). Regardless of the validity or invalidity of the SERP or any amendments to it (which is an issue better addressed separately after fact discovery has closed), a plaintiff may neither repeat, under the guise of § 502(a)(3), claims for relief she previously sought or could have sought under § 502(a)(1)(B), nor may she file new § 502(a)(3) claims that would not be available in equity. As set forth more fully below, the plaintiffs may not file claims under the "catchall" provision of § 502(a)(3)

because they can obtain adequate relief under § 502(a)(1)(B). And, in the alternative, the § 502(a)(3) claims asserted under the proposed Fourth Amended Complaint fail because they are not claims available in equity.

### A. The existence of adequate relief under § 502(a)(1)(B) precludes the plaintiffs' claims for equitable relief under § 502(a)(3)

ERISA § 502(a) empowers individuals to bring civil actions under the Act. 29 U.S.C. § 1132(a). In relevant part, § 502(a)(1)(B) allows a participant or beneficiary of an employee benefit plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3), meanwhile, empowers a "participant, beneficiary, or fiduciary" to bring a suit for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

Courts have found that the availability of a claim under ERISA § 502(a)(1)(B) generally precludes a plaintiff from making a comparable claim under § 502(a)(3). "[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity Corp. v. Howe, 516 U.S. 489, 515 (1996). Rather than being a primary enforcement mechanism, § 502(a)(3) is among ERISA's "'catchall' provisions [that] act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Id. at 512. Claims under § 502(a)(3) are upheld where the plaintiffs "must rely on the *third* subsection or they have no remedy at all." Id. at 515.

"Both the Supreme Court and Second Circuit have emphasized that section 502(a)(3) should not be used to recast claims for money damages into claims for equitable relief." Fernandez v. Wells Fargo Bank, N.A., 12 Civ. 7193 (PKC), 2013 WL 3465856, at *3 (S.D.N.Y.

July 9, 2013). See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.,

No. 13-4834-CV, 2014 WL 5904900, at *4 (2d Cir. Nov. 14, 2014) ("Even though [the plaintiff]

labeled Claims I and II as ones for declaratory and injunctive relief, the claims seek money

damages . . . Litigants are not at liberty to plead around ERISA's limitations . . . ."); Frommert v.

Conkright, 433 F.3d 254, 270 (2d Cir. 2006) ("Because adequate relief is available under

[ERISA § 502(a)(1)], there is no need on the facts of this case to also allow equitable relief under

§ 502(a)(3)."); Staten Island Chiropractic Associates, PLLC v. Aetna, Inc., 09 Civ. 2276

(CBA)(VP), 2012 WL 832252, at *10 (E.D.N.Y. Mar. 12, 2012) ("[C]ourts have consistently

refused to order injunctive relief [under ERISA § 502(a)(3)] that has the practical effect of

ordering the provision of benefits under the plan, because such relief is available under §

1132(a)(1)(B)."); Joyner v. Cont'l Cas. Co., 837 F. Supp. 2d 233, 243 (S.D.N.Y. 2011) ("[T]he

Court will first determine whether [plaintiff] is entitled to relief under § 502(a)(1)(B) for an

improper denial of benefits, and turn to § 502(a)(3) only if § 502(a)(1)(B) would not adequately

address her claims."); Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d

730, 737 (S.D.N.Y. 2011) (plaintiff's proposed § 502(a)(3) claims are legal claims for money

damages, which are "duplicative" of its § 502(a)(1)(B) claims, "as the gravamen of all three

Counts is that [defendant] improperly denied [plaintiff] benefits to which he was entitled under

the Plan"); Keir v. Unumprovident Corp., 02 Civ. 8781 (DLC), 2010 WL 3566878, at *8

(S.D.N.Y. Sept. 14, 2010) ("Because Plaintiffs' request for re-evaluation of their claims and

payment of any wrongfully-denied benefits is fully available under ERISA § 502(a)(1)(B), relief

under § 502(a)(3) is inappropriate and unnecessary.").

Counts I and II of both the Third Amended Complaint and the proposed Fourth Amended

Complaint contain claims for relief under § 502(a)(1)(B): Count I seeks recovery of benefits due

to Levy under the Original SERP, while Count II seeks to clarify and determine the rights and future benefits due to Lynn under the Original SERP. Proposed Counts VI, VII and VIII contain claims for relief under § 502(a)(3): Counts VI and VII seek restitution of the funds taken from the SERP Trust that constitute the plaintiffs' benefits or, alternatively, a constructive trust or equitable lien over YAI's general assets in the same amount; Count VIII seeks a decree of specific performance precluding the defendants from using the Trust assets for any purpose other than the payment of the plaintiffs' benefits or the administration of the Trust.

The defendants contend that, because the plaintiffs seek enforcement of the Original SERP and all the benefits due under it through Counts I and II, Proposed Counts VI, VII and VIII – which also seek to enforce the plaintiffs' rights under the Original SERP – are duplicative. This is correct. Indeed, Counts VI, VII and VIII dispute disbursements from the Trust allegedly authorized pursuant to amendments to the Plan; thus the plaintiffs merely seek to enforce the pre-amendment SERP. See Proposed Fourth Am. Compl. ¶¶ 263-64, 288-89, 313-14 (alleging that such disbursement "contravened section[s] 1.1 . . .[and] 2.2 of the Original SERP"). If successful on Counts I and II, the plaintiffs will be awarded the benefits due to them under the Original SERP, with prejudgment interest and attorney's fees. As such, the § 502(a)(3) claims merely duplicate the § 502(a)(1)(B) claims.

The plaintiffs contend, however, that their proposed § 502(a)(3) claims are necessary to prevent the defendants from draining the SERP Trust of funds and thereby eliminating the possibility of recovery. The terms of the SERP Plan, however, do not require all benefits due under the Plan to be paid out of the SERP Trust. Rather, the terms of the SERP Plan specifically establish that the SERP Trust was established "for the purpose of funding all *or a portion* of the deferred compensation benefits available under the Plan to participants." First Rakower Decl.,

Ex. F (hereinafter the "SERP") § 1.1 (emphasis supplied). Thus, the Plan itself contemplates that not all funding to satisfy the obligations to the participants would be held in trust. The SERP also provides that YAI "shall deliver *all* contributions made under the Plan to the Trustees." SERP § 2.1 (emphasis supplied). Thus, YAI is obligated to fund whatever benefits are deemed due to the plaintiffs.[2]

YAI's obligation to fund, from its general assets, whatever excess benefits are due to the plaintiffs beyond what is held in the Trust is also consistent with the SERP as a "top hat" plan, which makes it exempt from ERISA's funding requirements. 29 U.S.C. § 1081; Opinion and Order Adopting Report and Recommendation, Levy et al. v. Young Adult Institute et al., 13 Civ. 2861 (JPO)(SN) (S.D.N.Y. March 31, 2014), ECF No. 75, at p.7 n.5 (SERP is a top hat plan); 29 C.F.R. § 2520.104-23(d); SERP § 1.3; see Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 108 (2d Cir. 2008) (top hat plans are exempt from many ERISA requirements). In cases such as the one at hand, where the plan does not guarantee full funding and the trust behind it does not promise to fund fully the benefits due, victorious plaintiffs must be able to reach beyond the limits of the trust for any judgment exceeding the trust's assets, lest the entire plan be exactly the type of "empty promise" the Supreme Court has warned against in other sections of ERISA. Sereboff v. Mid Atlantic Medical Services, 547 U.S. 356, 363 (2006).

In addition, the Court of Appeals for the Second Circuit has repeatedly held that plan administrators may be held liable for unpaid benefits. "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."

---

[2] At oral argument on the motion, counsel for YAI made the same representation: "At the end of the day, if the Court orders that [the plaintiffs] are entitled to the resumption of benefits pursuant to the SERP, the way the SERP is written as you interpret the SERP, then YAI will be required, because it is a top hat plan and because of all the argument that you raise, YAI will be required to fund the SERP according to the way the Court has ordered it. To me that is black letter law." Transcript of Oct. 29, 2014 hearing, at 66:10-16.

Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989).; see also Crocco v. Xerox

Corp., 137 F.3d 105, 107-08 (2d Cir. 1998) ("Because it is clear from the Plan documents that

Xerox was neither the designated Plan administrator nor a Plan trustee . . . it cannot be held

liable for benefits due to Crocco under the plan."); Gates v. United Health Grp. Inc., 11 Civ.

3487 (KBF), 2012 WL 2953050, at *10 (S.D.N.Y. July 16, 2012) (citing Crocco, 137 F.3d at

107-08).

Relying on ERISA § 502(d)(2), the plaintiffs express concern that any judgment they

obtain for recovery of their benefits under ERISA § 502(a)(1)(B) is limited to the assets of the

Plan itself. See 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an

employee benefit plan shall be enforceable only against the plan as an entity and shall not be

enforceable against any other person unless liability against such person is established in his

individual capacity under this subchapter."); see also Greater Blouse, Skirt & Undergarment

Assn., Inc. v. Morris, 93 Civ. 1257 (SS), 1996 WL 325595, at *4 (S.D.N.Y. June 12, 1996) (the

plan administrator should not be held individually liable for unpaid benefits due – payment of

benefits is "uniquely the Plan's obligation"). The district court's decision in Greater Blouse,

however, predates the Court of Appeals' decision in Crocco, which supports a broader reading of

Leonelli. Moreover, the Court of Appeals has specifically addressed the potential conflict

between ERISA § 502(a) and ERISA § 502(d) in Chapman v. ChoiceCare Long Island Term

Disability Plan, 288 F.3d 506 (2d Cir. 2002). In Chapman, the Court of Appeals reiterated that

both plans and plan administrators are proper defendants under ERISA § 502(a). The court

specifically noted that the idea "that benefits may be recovered against a plan administrator . . .

[is] entirely consistent with the view we expressed in Leonelli and Crocco that 'the plan and the

administrators and trustees of the plan in their capacity as such may be held liable.'" <u>Id.</u> at 510

(internal citations omitted).[3]

      Proposed Counts VI and VII, which seek restitution of lost benefits, and Proposed Count

VIII, which seeks specific performance to prevent misuse of SERP assets, are "merely a prelude

to a request for damages." <u>Berger v. Xerox Corp. Ret. Income Guarantee Plan</u>, 338 F.3d 755,

763 (7th Cir. 2003). Because the SERP Trust is not the sole source of funds for payment of the

benefits allegedly due to the plaintiffs, success on Counts I and II would have the same effect as

success on these proposed counts. Such duplication is plainly impermissible. <u>Varity Corp.</u>, 516

U.S. at 515; <u>Gerber</u>, 2014 WL 5904900, at *4; <u>Frommert</u>, 433 F.3d at 270; <u>Keir</u>, 2010 WL

3566878, at *8; <u>Biomed Pharm.</u>, Inc., 775 F. Supp. 2d at 738 ("Biomed's Section 502(a)(3)

claims would survive only if they sought relief that could not adequately be addressed by the

relief available under Section 502(a)(1)(B).").

### B.  Plaintiffs' claims under § 502(a)(3) are not available in equity

      As discussed above, a § 502(a)(3) claim cannot seek relief otherwise available under

§ 502(a)(1)(B). But even where § 502(a)(1)(B) might not provide an adequate remedy, claims

under § 502(a)(3) for "appropriate equitable relief" authorize only the kinds of relief "typically

available in equity" in the days of "the divided bench," before law and equity merged. <u>Mertens v.</u>

<u>Hewitt Associates</u>, 508 U.S. 248, 256 (1993); <u>see also</u> <u>Gerber</u>, 2014 WL 5904900, at *9

("[A]lthough [plaintiff] might well be left without an appropriate remedy as a result of this

---

[3] In <u>Yoon v. Fordham Univ. Faculty</u>, 173 F. App'x 936 (2d Cir. 2006), a later panel of the Second Circuit invoked ERISA § 502(d) to block an employee's benefit claim against a university defendant that funded but did not administer a plan. In *dicta*, the court distinguished <u>Chapman</u> on the grounds that <u>Chapman</u> "considered only whether an unfunded plan could be removed as a defendant, not whether the party funding the plan was a proper defendant." <u>Id.</u> at 941, n.4. Regardless of the ultimate limitations of <u>Chapman</u>, it is instructive here, whereas <u>Yoon</u> is not because its relevant holding was only that providing funding alone—where the defendant was not the plan administrator—was insufficient to make a defendant liable for benefits.

decision . . . the claims raised by [plaintiff] are legal, not equitable, and therefore may not be brought under § 502(a)(3).")

Recognizing that ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system," Mertens, 508 U.S. at 248 (internal citations omitted), the Court has been especially "reluctant to tamper with [the] enforcement scheme" set forth in the statute by extending remedies not specifically authorized, Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1980). Accordingly, the Court has carefully policed § 502(a)(3) claims to prevent them from expanding beyond the statute's intended scope. See also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 220-21 (2002) (discussing textual difference between § 502(a)(1)(B) and § 502(a)(3)); Gerber, 2014 WL 5904900, at *4 ("[F]ollowing [Knudson], we are not free to fill in unwritten gaps in ERISA's civil remedies by reading into the statute additional causes of action . . . As the Supreme Court has emphasized, ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive."). Thus, to proceed with a claim under ERISA § 502(a)(3), the plaintiffs must demonstrate "*both* that the 'basis for [the] claim' *and* the 'nature of the recovery' sought be equitable." Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006) (citing Sereboff, 547 U.S. at 363).

For example, in Sereboff, the Court allowed a health-plan administrator to bring a claim under § 502(a)(3) seeking reimbursement under the plan's reimbursement provision of money paid to a plan participant for medical expenses after the plan participant had recovered damages from third-party tortfeasors. The Court held that Mid Atlantic's action sought "equitable relief," as § 502(a)(3) requires. See 547 U.S. at 369. The "nature of the recovery" requested was equitable because Mid Atlantic claimed "specifically identifiable funds" within the Sereboffs'

control – that is, a portion of the settlement they had received and held. Id. at 362-63 (internal quotation marks omitted). And the "basis for [the] claim" was equitable too, because Mid Atlantic relied on "'the familiar rul[e] of equity that a contract to convey a specific object'" not yet acquired "'create[s] a lien'" on that object as soon as "'the contractor . . . gets a title to the thing.'" Id. at 363-64 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914)). "Mid Atlantic's claim for reimbursement, [the Court] determined, was the modern-day equivalent of an action in equity to enforce such a contract-based lien – called an 'equitable lien by agreement.'" U.S. Airways, Inc. v. McCutchen, __ U.S. __, 133 S. Ct. 1537, 1545 (2013) (quoting Sereboff, 547 U.S., at 364-65 (internal quotation marks omitted)). Accordingly, Mid Atlantic could bring an action under § 502(a)(3) seeking the funds that its beneficiaries had promised to turn over but still held in their possession.

By contrast, the Court has held that equitable relief was not available where the remedy sought would "impose personal liability . . . for a contractual obligation to pay money." Knudson, 534 U.S. at 210. Much like in Sereboff, the plan at issue in Knudson included a reimbursement provision for benefits paid to plan beneficiaries; the provision entitled the plan to assert a lien for any money received by a plan beneficiary from a third-party tortfeasor, and held the beneficiary "personally liable" to the plan up to the amount of the lien. Id. at 207. Following the settlement of a tort action brought in state court by the plan beneficiary against a third-party tortfeasor, the state court ordered money to be paid directly to a Special Needs Trust as required by California law. Thereafter, Great-West filed a federal action under § 502(a)(3), seeking directly from the beneficiary the benefits it had paid and that were now held in the trust.

The Court rejected the petitioner's arguments that the relief it sought was "equitable" under § 502(a)(3). First, the Court dismissed the characterization of the relief sought as seeking

"to enjoin a[n] act or practice which violates . . . the terms of the plan." The petitioners were seeking to force the beneficiaries to reimburse the plan, and "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." Id. at 210-11.

Second, the Court recognized that "not all relief falling under the rubric of restitution is available in equity." Id. at 212. "In cases in which the plaintiff 'could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him,' the plaintiff had a right to restitution *at law* . . . ." Id. at 213 (quoting 1 D. Dobbs, Law of Remedies § 4.2(1), p. 571 (2d ed. 1993)). "In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. (citing 1 Dobbs § 4.3(1), p. 587-88; Restatement of Restitution § 160, Comment *a*, at 641-42 (1936)). "But where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'" Id. at 213-14 (quoting Restatement of Restitution § 215, Comment *a*, at 867). "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214.

In Knudson, the funds sought by the plan were sequestered in the Special Needs Trust and so not in the defendants' possession. Therefore, the action was simply a claim against the beneficiaries' general funds for money due under a contract, quintessentially an action at law. Id.

at 221; see also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005) (affirming

dismissal of claims under ERISA § 502(a)(3) where monies upon which plaintiffs sought to

impose a constructive trust were proceeds held in an unsegregated account). The Court of

Appeals for the Second Circuit recently reaffirmed the central tenets of Knudson in Gerber, a

case in which plaintiff insurance company Central States sought payment from defendant Gerber

Life Insurance Co. for benefits paid to a common beneficiary. Central States sought, *inter alia*,

restitution and the imposition of an equitable lien or constructive trust to secure the

reimbursement funds under ERISA § 502(a)(3). Gerber, 2014 WL 5904900, at *2. In affirming

the dismissal of the § 502(a)(3) claims, the Court of Appeals explained that Central States'

claims for declaratory and injunctive relief were actually claims for money damages and

therefore barred under Knudson. Id. at 8.

Here, much like in Knudson, the funds the plaintiffs seek have been removed from the

Trust and have been used to pay legal fees and settlement amounts. The funds are no longer in

the possession of the defendants and therefore the plaintiffs seek restitution from the defendants'

general assets. See Proposed Fourth Am. Compl. ¶¶ 271, 296 ("Plaintiffs seek (1) an order of

*restitution*," as well as either an order requiring disgorgement or profits, "or, in the alternative,

imposing a constructive trust or equitable lien over YAI's *general assets* . . . .") (emphases

supplied). Thus, the plaintiffs seek to impose personal liability on the defendants rather than

restore to the plaintiffs particular funds in the defendants' possession. Otherwise said, they seek

an equitable lien as a matter of restitution. This is a remedy available at law. See, e.g., Gerber,

2014 WL 5904900, at *7 ("Absent such an [equitable lien by] agreement, Central States is, in

effect, seeking compensation from Gerber's general assets . . . such relief is legal relief that is not

available under § 502(a)(3)."); De Pace v. Matsushita Elec. Corp., 257 F. Supp. 2d 543

(E.D.N.Y. 2003) (citing <u>Knudson</u> for the proposition that a plaintiff's claims are at law when she or he seeks restitution of property or funds that have been dissipated, and that such restitution cannot be sought through imposition of a constructive trust or equitable lien); <u>Neidich v. Estate of Neidich</u>, 222 F. Supp. 2d 357, 375 (S.D.N.Y. 2002) ("The money already dispersed to [defendants] can not be recovered in equity pursuant to ERISA, § 502(a)(3), because these disbursements can no longer be traced to a particular fund.").

The plaintiffs argue that the proposed claims in fact satisfy the strict tracing rules required for equitable relief because "the assets YAI misappropriated are directly traceable to [the SERP Trust]." Plfs. Reply Br. at 15. This confuses the analysis. To be entitled to restitution under § 502(a)(3), the plaintiffs must point to the specific funds to be returned, and those funds must be in the defendants' current possession. Identifying the location where dispersed funds were previously held is insufficient.

Alternatively, the plaintiffs argue that they seek an equitable lien by agreement, which does not require the plaintiffs to satisfy the tracing rules needed for an equitable lien as a matter of restitution. <u>See</u> <u>Sereboff</u>, 547 U.S. at 364-65 ("no tracing requirement . . . applies to equitable liens by agreement or assignment"); <u>see also</u> <u>Thurber v. Aetna Life Ins. Co.</u>, 712 F.3d 654, 662-63 (2d Cir. 2013). This argument is not supported by the language of the proposed counts. Proposed Counts VI and VII do not invoke a promise to restore funding once held in trust or any other agreement that provides notice to the defendants that they would be required to refund money to the Trust.

Instead, the plaintiffs point to provisions of the SERP that explain how the money held in the Trust is to be used. The Plan provides that all contributions held in the Trust are "for the exclusive benefit of" the Plan participants and beneficiaries, and that the funds cannot be used

for any other purpose "prior to the satisfaction of all liabilities" to those same parties. SERP

§ 2.2. The plaintiffs contend that this creates a lien by agreement.[4] While this language, on its

face, grants the plaintiffs certain rights in connection with the funds held in the Trust, such rights

do not *sub silentio* create an enforceable promise to restore the funds, much less put the

defendants on notice that any funding removed from the Trust must be returned.

When courts have relaxed the tracing requirements, it has been where benefit plans

include plainly stated reimbursement provisions. See, e.g., Sereboff, 547 U.S. at 363; Thurber,

712 F.3d at 664-66. Indeed, in Gerber, the Court of Appeals specifically found that Sereboff and

its progeny had *not* eliminated the strict tracing requirements of Knudson, but rather, "while this

tracing requirement may have been somewhat loosened, it is still very much in force." Gerber,

2014 WL 5904900, at *4. Instead, "Sereboff stands for the proposition that if the parties to a

contract agree to the *transfer of property*, that agreement substitutes for the tracing requirement."

Id. at 10 (emphasis supplied). Absent a similar provision, the Court will not read one in. See id.

at 11 ("'ERISA-plan provisions do not create constructive trusts and equitable liens by the mere

fact of their existence; the liens and trusts are created by the agreement between the parties to

deliver assets." (citing Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Health Special

Risk, Inc., 756 F.3d 356, 365 (5th Cir. 2014)).); Nechis, 421 F.3d at 104 ("We decline this

invitation to perceive equitable clothing where the requested relief is nakedly contractual.")

While the plaintiffs use terms of equity such as "disgorgement" and "restitution," and press upon

---

[4] In making this argument, the plaintiffs concede that their claim is really one for money due under a contract; quintessentially an action at law: "[T]he parties have a contract by virtue of the SERP Plan and Trust." Plfs. Reply Br. at 16.

the Court the unfairness and inequity of denying these claims, the Court is bound by the law and cannot convert legal claims into truly equitable claims.[5]

### C.  Derivative actions are unavailable under ERISA § 502(a)(3)

ERISA § 502(a)(3) specifically enumerates those parties empowered to bring a civil action under the Act: "a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). "Courts have consistently read § 1132(a)(3) as strictly limiting 'the universe of plaintiffs who may bring certain civil actions.'" Connecticut v. Physicians Health Servs. of Connecticut, Inc., 287 F.3d 110, 121 (2d Cir. 2002) (citing Harris Trust and Savs. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 247 (2000) (alteration in original)). "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Knudson, 534 U.S. at 209 (internal citations and quotation marks omitted)); see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502 . . . .").

The statutory limitation on potential plaintiffs is clear and uncontroversial, and plainly does not include employee benefits funds themselves. "In light of the frequent references in [ERISA] and its legislative history to 'participants, beneficiaries and fiduciaries,' this conclusion [that funds have standing to bring a suit under § 502(a)] is untenable." Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co., 700 F.2d 889, 893 (2d Cir. 1983). "Because ERISA plans cannot bring suit against fiduciaries on the plans' own behalf under

---

[5] "Even if [the Knudson] reading is one that we find problematical, we are bound to apply the law as interpreted by the Supreme Court, hoping that it (and that Congress) will revisit this tangled web sooner rather than later." Gerber, 2014 WL 5904900, at *9.

section 502, the lawsuits of individual participants are not derivative either." <u>Coan</u>, 457 F.3d at 258.

Thus, Proposed Count VII is also futile because ERISA § 502(a)(3) does not permit the plaintiffs to file derivative suits on behalf of plans. Count VII is unambiguously labeled a "<u>Derivative</u> Equitable Claim of Restitution and Disgorgement of Profits and Request for Imposition of a Constructive Trust or Equitable Lien," and the plaintiffs couch the claim "[i]n the alternative event that the remedies sought in Plaintiffs' equitable claim for restitution and disgorgement of profits are available only as part of a derivative claim . . . ." Proposed Fourth Am. Compl., ¶ 273 (emphasis supplied). The plaintiffs, however, may not pursue the relief they seek as a derivative action on behalf of the SERP Trust itself. The plaintiffs' citations to decisions of the Court of Appeals of the Third Circuit are unavailing within the Second Circuit, where the proposition that § 502(a)(3) does not authorize derivative suits is unassailable. <u>Coan</u>, 457 F.3d at 258; <u>Pressroom Unions-Printers</u>, 700 F.2d at 893; <u>In re Meridian Funds Grp. Sec. & ERISA Litig.</u>, 09 M.D. 2082 (TPG), 2014 WL 1257279, at *1 (S.D.N.Y. Mar. 26, 2014) ("Because the Meridian Fund is not [an enumerated party under ERISA § 502(a)], it follows that it has no standing to sue under ERISA § 502, nor can a derivative action be brought on its behalf. This conclusion alone warrants dismissal of the complaint.").

### D.  Plaintiff's claim for specific performance fails the requirements of ERISA § 502(a)(3)

Claims for specific performance are generally not authorized under ERISA § 502(a)(3). Such an injunction under this subsection must, like other equitable claims, meet the requirements of relief formerly available only in equity. Specifically, to fall under the ERISA § 502(a)(3) umbrella of "appropriate equitable relief," a specific performance claim must fall into one of two "rare" categories by seeking "to prevent future losses that either [are] incalculable or would be

greater than the sum awarded." <u>Knudson</u>, 534 U.S. at 210-11; <u>see also, e.g.</u>, <u>Wilkins v. Mason Tenders Dist. Council Pension Fund</u>, 445 F.3d 572, 578-79 (2d Cir. 2006) (citing <u>Knudson</u> in recognition of limitation on specific performance claims); <u>Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan</u>, 911 F. Supp. 2d 243, 255 (S.D.N.Y. 2012) (same); <u>Wagner v. Metro. Life Ins. Co.</u>, 08 Civ. 11284 (GBD)(HBP), 2011 WL 2638143, at *16 (S.D.N.Y. Feb. 28, 2011) <u>report and recommendation adopted</u>, 08 Civ. 11284 (GBD)(HBP), 2011 WL 2623390 (July 1, 2011) (same).

The plaintiffs' Proposed Count VIII seeks "a decree of specific performance precluding [alleged equitable defendants] from using the assets of the SERP Plan and Trust for any purpose other than to pay future benefits owed to participants and beneficiaries or expenses related to the administration of the SERP Plan and Trust." Proposed Fourth Am. Compl. ¶ 321. Such a claim is futile for much the same reasons as the plaintiffs' Proposed Count VI.

First, such relief is not available in equity. Proposed Count VIII would neither prevent an *incalculable* future loss, nor would it prevent a loss *greater* than the sum the plaintiffs are seeking. The alleged future loss is one that the plaintiffs have calculated exactly, and it would not prevent any future loss greater than the sum sought, thus failing the requirements of <u>Knudson</u>.

Second, Proposed Count VIII would duplicate the plaintiff's claims under § 502(a)(1)(B). As with the other proposed counts, the plaintiffs here seek to enforce the alleged terms of the SERP. Victory on this proposed count would merely assure the plaintiffs that funds remain in the SERP Trust. This would do nothing to offer them relief beyond what they seek in their existing claims, particularly as success on those claims would already allow them to reach beyond the SERP Trust to recover damages in excess of the funds available there.

Thus, on the one hand, Proposed Count VIII fails the requirements of <u>Knudson</u>. On the other hand, it duplicates relief the plaintiffs have already sought under § 502(a)(1)(B). For the reasons stated in this section, as well as for the reasons stated in Part II(A), *supra*, the plaintiffs' Proposed Count VIII is futile.

**CONCLUSION**

For the reasons discussed above, the plaintiffs' motion to amend the Third Amended Complaint is DENIED. The Clerk of Court is directed to terminate the motion at Docket Number 137.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
            November 21, 2014