UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOEL M. LEVY and JUDITH W. LYNN,

                                         Plaintiffs,

                   -against-

YOUNG ADULT INSTITUTE, INC., et al.,

                                         Defendants.

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 11/21/2014

13-CV-02861 (JPO)(SN)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE J. PAUL OETKEN:**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiffs Joel M. Levy and his spouse Judith W. Lynn (collectively, the "plaintiffs")

bring this action pursuant to: (1) the enforcement provisions of the Employee Retirement Income

Security Act of 1974 ("ERISA" or the "Act") to recover and to clarify benefits due to them and

to obtain appropriate equitable relief under the terms of a Supplemental Pension Plan and Trust

for Certain Management Employees of Young Adult Institute (the "SERP" or the "SERP Plan

and Trust") and under the terms of a Life Insurance Plan and Trust for Certain Management

Employees of Young Adult Institute (the "Life Insurance Plan and Trust"); (2) case law from the

Court of Appeals for the Second Circuit applying the principles of promissory estoppel to ERISA

claims to enforce promises not to reduce certain benefits under the SERP; and (3) a state law

claim for damages for breach of fiduciary duty.

Plaintiffs have filed a motion for a temporary restraining order and preliminary

injunction. Specifically, they seek: (1) to enjoin the equitable defendants during the pendency of

this action from using assets of the SERP Plan and Trust for any reason other than payment of

the administrative expenses associated with the plan or payment of Plaintiffs' benefits as provided for in § 2.2 of the SERP Plan and Trust; (2) to permit plaintiffs to obtain expedited discovery from the Young Adult Institute, Inc. ("YAI"), Israel Discount Bank of New York ("IDB Bank"), and Eliot P. Green, as Chairman of the Board, concerning IDB Bank's resignation and the aggregate sum allegedly wrongfully taken from the SERP Plan and Trust; and (3) to restore the *status quo ante* by either: (a) enjoining the equitable defendants to restore all funds wrongly taken from the SERP Plan and Trust (at least $11.2 million) after the start of the parties' dispute over Plaintiffs' entitlement to benefits under the SERP Plan and Trust; or (b) imposing a constructive trust over at least $11.2 million of general assets belonging to YAI to insure that assets rightfully due to the SERP Plan and Trust are maintained in a manner consistent with the contractual terms governing the plan.

For the following reasons, I recommend that plaintiffs' motion for preliminary injunctive relief be DENIED.

## BACKGROUND

I.    **Factual Background[1]**

A.  **The Original SERP and Amendments**

YAI is a New York non-profit organization that serves people with developmental disabilities. Levy worked for YAI for over 40 years before his retirement, first as Executive Director and later as Chief Executive Officer. YAI promised Levy (and his wife) certain compensation and benefits that were set forth in the Supplemental Pension Plan for Certain Management Employees of Young Adult Institute, dated July 1, 1985. Yang Decl., Ex. 3 (hereinafter the "SERP"). Pursuant to the Original SERP, YAI also created a trust (the "SERP Trust" or the "Trust") to "fund[] all or a

---

[1] The Court assumes familiarity with the facts and procedural history of this case, and recites only those facts relevant to the resolution of this motion.

portion of the deferred compensation benefits available under the Plan to participants." SERP § 1.1. YAI is to deliver all contributions made under the Plan to the trustees. SERP § 2.1. All contributions held in the Trust are "for the exclusive benefit of . . . [the] participants under the Plan and their beneficiaries . . . ." SERP § 2.2. Indeed, the Original SERP provides, with exceptions not relevant here, that "[a]t no time prior to the satisfaction of all liabilities with respect to such participants or their beneficiaries shall any portion of the Trust Fund . . . be used for, or diverted to, purposes other than for the exclusive benefit of such participants or their beneficiaries." Id.

The trustees shall "receive, hold, invest, administer, and distribute in accordance with the provisions of [the SERP Plan and Trust], as it may be amended and in force from time to time." Id. YAI retained "the right to amend the Trust at any time and from time to time, by resolution of the Board or the Committee. . . and all persons claiming any interest hereunder shall be bound thereby; provided, however, that no amendment shall have the effect of . . . (iii) causing any part of the Trust Fund to be used for any purpose other than for the exclusive benefit of Plan participants and their beneficiaries . . . ." SERP § 7.1.

The trustees are authorized "to employ attorneys, actuaries, consultants, auditors, investment advisors, trustees, custodians, depositories, and other agents . . . and to pay their reasonable compensation and expense out of the Trust Fund." SERP § 4.2(l). There is no limit on the work attorneys or others can perform.

On December 18, 2008, YAI purportedly amended the Original SERP to reduce the benefits due to the plaintiffs. Yang Decl., Ex. 8 (the "2008 Amendment"). Plaintiffs contest the validity of the 2008 SERP Amendment in Counts I and II of the Third Amended Complaint. As of July 1, 2009, the value of the benefits due to Levy, according to the plaintiffs and based on the Amended SERP's terms, was approximately $11.6 million. Yang Decl., Ex. 7. By November 2012, the plaintiffs became the sole remaining participant and beneficiary of the SERP Plan and Trust.

In approximately June 2011, the two acting trustees of the SERP Plan and Trust resigned, and no new trustee was appointed until August 5, 2013, when IDB Bank was appointed as sole successor trustee. More recently, IDB Bank has resigned as trustee. At the hearing on this motion, defense counsel indicated that Deutsche Bank was poised to take over as trustee.

**B. False Claims Act Investigation, Settlement and Review of Levy's Compensation**

On May 28, 2009, a *qui tam* action was filed against YAI, Levy and others, alleging that certain information reported in YAI's annual cost reports, a required annual government filing, were false. This lawsuit triggered an investigation (and ultimately intervention into the suit) by the U.S. Attorney's Office for the Southern District of New York and the New York State Office of the Attorney General. The *qui tam* action was ultimately settled, and the settlement agreement required a payment to the state and federal governments of $18 million over five years.

Facing increased governmental scrutiny, and large outstanding debt owed under the *qui tam* settlement agreement, the New York State Office for People with Developmental Disabilities ("OPWDD") placed YAI on Early Alert status, which limited in certain respects YAI's capacity to provide services and grow as an organization. OPWDD also took an interest in YAI's executive compensation levels and requested the documentation relied upon by the Board to set the compensation packages for Levy and others. In response, YAI hired a (new) compensation consultant to assess the reasonableness of its executive compensation (something YAI had done historically). This consulting firm – Mercer LLC – concluded that Levy was entitled to only an additional $929,200 in total post-termination benefits, rather than the $11.6 million plaintiffs claim.

**C. Board Resolution and the 2012 Amendment to the SERP**

In 2011, the YAI Board passed a resolution directing that legal expenses related to the SERP Plan and Trust be paid from the Trust (the "2011 Resolution"). The plaintiffs allege that at least $2.3 million in legal fees were paid from the SERP Trust; whereas defendants believe the sum is closer to $1.7 million.

In October 2012, YAI again purported to amend the SERP. This amendment added Section 8.5, "Reversion of Trust Assets at the Direction of [OPWDD]," which permitted YAI to "distribute all Trust assets to [YAI] as required by [YAI's] commitment to [OPWDD], except for that portion of the Trust necessary to satisfy a Plan participant's protected interest in the Plan . . . ." Chow Decl., Ex. L (the "2012 Amendment"). Pursuant to this amendment, YAI, as administrator of the Plan, disbursed $8.9 million to satisfy the remainder of its obligations under the *qui tam* settlement agreement with the State of New York and federal government. In return, OPWDD removed YAI from Early Alert status. The 2012 Amendment also capped the benefits of any one SERP participant to those determined by Mercer.

As of November 2012, the estimated market value of the remaining assets in the SERP Plan and Trust was $8.4 million.

## II.     Procedural History

### A.  Motion to Amend the Third Amended Complaint

On July 14, 2014, the plaintiffs filed a motion to amend the Third Amended Complaint. The plaintiffs looked to add equitable claims under ERISA § 502(a)(3), primarily seeking restitution or a constructive trust or equitable lien over the assets removed from the Trust. By Opinion and Order filed simultaneously with this report, the Court denied the motion to amend. Accordingly, the only equitable claim asserted in plaintiff's operative complaint is one for accounting. See Third Am. Compl., ¶¶ 228-242.

### B.  Motion for Preliminary Injunction and Order to Show Cause for Temporary Relief

On July 15, 2014, the plaintiffs filed a motion for a preliminary injunction. On July 23, 2014, by stipulation of the parties, a relatively relaxed briefing schedule was set. A week later, however, the plaintiffs filed an order to show cause for a temporary restraining order and a preliminary injunction, seeking to enjoin the defendants from using any additional Trust assets,

and to enjoin the defendants to restore the allegedly misappropriated Trust funds (approximately $11.2 million) or to impose a constructive trust over at least $11.2 million of YAI's general assets. On July 30, 2014, the Hon. J. Paul Oetken issued a temporary restraining order pending a hearing on the issues. The following day, at the hearing, Judge Oetken vacated his order, finding that the plaintiffs had failed to show irreparable harm.

Accordingly, defendants filed their opposition to the motion for preliminary injunction on August 20, 2014, and the plaintiffs filed their reply brief in further support of their motion on September 16, 2014. The Court held oral argument on the motion on October 29, 2014.

## DISCUSSION

## I.      Legal Standard for Granting a Preliminary Injunction

To obtain preliminary injunctive relief in a federal case, a plaintiff generally must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 215 (2d Cir. 2012). This "serious questions" test is also the standard for a temporary restraining order. The preliminary relief sought also must not exceed the relief sought in the complaint. De Beers Consol. Mines v. United States, 325 U.S. 212, 222-23 (1945).[2]

---

[2] As the Supreme Court explained in De Beers Consol. Mines v. United States, 325 U.S. 212 (1945), to allow otherwise"would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence." Id.

### A.  Irreparable harm

Irreparable harm is the "linchpin" of a court's determination of whether a preliminary injunction is available. Buckingham Corp. v. Karp, 762 F.2d 257, 262 (2d Cir. 1985). "The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989). Such a burden can be met in cases where the moving party has shown that the alleged injury could not be fairly and easily monetized. Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 909 (2d Cir. 1990) (preliminary injunction appropriate where alleged injury "incalculable in dollars and sense will likely occur").

In cases where a monetary preliminary injunction is permissible despite the relief sought being easily countable, courts have found extraordinary circumstances to justify making an exception to the rule. E.g., Brenntag Int'l Chemicals, Inc. v. Bank of India, 175 F.3d 245, 250 (2d Cir. 1999) ("[C]ourts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents."); In re Feit & Drexler, Inc., 760 F.2d 406, 416 (2d Cir. 1985) (monetary preliminary injunction appropriate where defendant had repeatedly demonstrated intent "to frustrate any judgment on the merits by transferring its assets out of the jurisdiction" (internal quotations, citations and alterations omitted)); Seide v. Crest Color, Inc., 835 F. Supp. 732, 735 (S.D.N.Y. 1993) (plaintiff had been unable to collect on past judgments); Gelfand v. Stone, 727 F. Supp. 98, 100-01 (S.D.N.Y. 1989) ("There is substantial evidence of [defendant's] past fraudulent activities, as well as his on-going efforts to place his assets outside the reach of his creditors.").

### B.  Freezing assets

Movants seeking to freeze assets in anticipation of a judgment face one additional hurdle to obtaining a preliminary injunction. Basing its decision on the old division between law and equity, the Supreme Court held in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), that a party seeking to freeze assets must show that they have a lien or equitable interest in the property to be frozen. Id. at 332-33. The Court based its decision on the idea that the merging of law and equity did not eliminate the distinction between the remedies available under each, and reconciled Deckert v. Independence Shares Corp., 311 U.S. 282 (1940) (purchasers of stock certificates awarded preliminary injunction to freeze a fixed sum where movants alleged that company was insolvent and sale was fraudulent), and United States v. First Nat. City Bank, 379 U.S. 378 (1965) (United States awarded preliminary injunction to freeze taxpayer assets in foreign bank) with De Beers Consol. Mines. The Court explained that a preliminary injunction was available in Deckert because the plaintiff had stated an equitable cause of action, while in First Nat. City Bank such relief was appropriate because the claim fell under a specific legislative authorization to issue tax injunctions, the claim was in the public interest, and the Government (reasonably) asserted an equitable lien on the property in question. Grupo Mexicano, 527 U.S. at 324-26. The Court then reiterated the holding of De Beers—a preliminary injunction is only available to grant the same relief sought in the complaint—and warned against expanding preliminary injunctions to allow a movant to benefit from making sweeping, unfounded claims in order to obtain extraordinary relief. Id. at 326-27 (citing De Beers Consol. Mines, 325 U.S. at 222-23).

Lower courts have generally interpreted Grupo Mexicano to bar preliminary injunctions in cases that seek primarily legal remedies. See JSC Foreign Econ. Ass'n Technostroyexport v.

Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by Grupo Mexicano.").

> It follows that, to obtain [an asset freeze], the movant must satisfy the court that he is asserting an equitable claim in this proceeding and that the injunctive relief that he is seeking is related to that claim, or, alternatively, that he should be deemed to have an equitable lien, or other interest enforceable in equity, on the assets that he [is] seeking to attach or otherwise freeze.

Serio v. Black, Davis & Shue Agency, Inc., 05 Civ. 0015 (MHD), 2005 WL 3642217, at *6 (S.D.N.Y. Dec. 30, 2005).

The Court of Appeals for the Second Circuit recently identified an exception to Grupo Mexicano, allowing a party to preliminarily freeze assets on the basis of an accounting claim under the Lanham Act § 35(a), 15 U.S.C § 1117(a). Gucci Am., Inc. v. Weixing Li, 11-3934-cv, 2014 WL 4629049 (2d Cir. Sept. 17, 2014). In Gucci, the Court of Appeals specifically noted the distinction between an accounting for profits, which could support the injunction, and one for damages and for amounts already owed under a contract, which could not under the holding of Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). Gucci, 2014 WL 4629049, at *7-8. The circuit court made clear that this exception allowing a preliminary injunction to recover profits applies only in the context of trademark infringement:

> Given the weight of this authority, it is not surprising that all three of our sister circuits to have considered the issue have unanimously held that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting *against allegedly infringing defendants in Lanham Act cases*.

Id. at *7 (emphasis supplied). The circuit court further noted that the Lanham Act (unlike ERISA § 502(a)(3)) does not include a requirement that the plaintiff identify the particular fund from which equitable recovery is sought. Id. at *8. Thus, while a plaintiff in a trademark case for

recovery of profits may receive a preliminary injunction freezing the defendant's assets, this is a cabined exception which does not override the general rule that plaintiffs in other actions may seek an asset freeze only when it is related to a valid equitable claim.

### C. Expedited discovery

Courts in this circuit employ two tests to determine whether to grant expedited discovery. Litwin v. OceanFreight, Inc., 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011). The first is a "reasonableness standard." See N. Atl. Operating Co. v. Evergreen Distributors, LLC, 293 F.R.D. 363, 367 (E.D.N.Y. 2013) (party seeking discovery must "prove that the requests are reasonable under the circumstances" (citation omitted)). The second test requires a showing of: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); see also KTVG Partners, LLC v. Sigel, No. 11 Civ. 2890 (NGG)(JMA), 2011 WL 2837437, at *2 (E.D.N.Y. July 14, 2011) ("[B]ecause plaintiff fails to demonstrate irreparable harm, I need not discuss the three remaining elements [of the Notaro test], and plaintiff's motion [for expedited discovery] is denied without prejudice.").

## II.    Application

### A.  Plaintiffs have not demonstrated irreparable harm

As explained above, a plaintiff must make a showing of irreparable harm in order to receive preliminary relief. Buckingham Corp., 762 F.2d at 262. A risk of monetary harm is not considered "irreparable," Tucker, 888 F.2d at 975, unless the harm alleged is uncountable, Reuters, 903 F.2d at 909, or in the case of extraordinary circumstances, such as insolvency or

willful attempts to avoid paying a judgment, e.g., Brenntag, 175 F.3d at 250; In re Feit, 760 F.2d at 416. Though the parties may disagree on the exact calculation of benefits the plaintiffs may be owed, it is clear that such an amount would be both monetary (payment of benefits) and countable (based on the benefit formula or the Mercer recommendation). Therefore, the only issues remaining to determine whether or not the harm alleged would be irreparable are whether (1) the benefits would be recoverable at judgment absent a preliminary injunction, and (2) in the case of the third form of preliminary relief sought, whether the plaintiffs have satisfied the additional requirements to freeze the defendant's assets.

## 1. Plaintiffs may reach beyond the SERP to satisfy any eventual judgment against YAI

Plaintiffs claim that they would suffer irreparable harm absent a preliminary injunction because YAI could remove money from the SERP and pull it out of the plaintiffs' reach. This argument, which underlies both their request to enjoin the assets of the SERP and the general assets of YAI, is not supported by the SERP or how the case law has developed. YAI itself is responsible for the funding of any benefits due to the plaintiffs.

Contrary to the plaintiffs' view, the terms of the SERP Plan do not require all benefits due under the Plan to be paid out of the SERP Trust. Rather, the terms of the SERP Plan specifically establish that the SERP Trust was established "for the purpose of funding all *or a portion* of the deferred compensation benefits available under the Plan to participants." SERP § 1.1 (emphasis supplied). Thus, the Plan itself contemplates that not all funding to satisfy the obligations to the participants would be held in trust. The SERP also provides that YAI "shall

deliver *all* contributions made under the Plan to the Trustees." SERP § 2.1 (emphasis supplied).

Thus, YAI is obligated to fund whatever benefits are deemed due to the plaintiffs.[3]

      YAI's obligation to fund, from its general assets, whatever excess benefits are due to the

plaintiffs beyond what is held in the Trust is also consistent with the SERP as a "top hat" plan,

which makes it exempt from ERISA's funding requirements. 29 U.S.C. § 1081; Opinion and

Order Adopting Report and Recommendation, Levy et al. v. Young Adult Institute et al., 13 Civ.

2861 (JPO)(SN) (S.D.N.Y. March 31, 2014), ECF No. 75, at p.7 n.5 (SERP is a top hat plan); 29

C.F.R. § 2520.104-23(d); SERP § 1.3; see Paneccasio v. Unisource Worldwide, Inc., 532 F.3d

101, 108 (2d Cir. 2008) (top hat plans are exempt from many ERISA requirements). In cases

such as the one at hand, where the plan does not guarantee full funding and the trust behind it

does not promise to fund fully the benefits due, victorious plaintiffs must be able to reach beyond

the limits of the trust for any judgment exceeding the trust's assets, lest the entire plan be exactly

the type of "empty promise" the Supreme Court has warned against in other sections of ERISA.

Sereboff v. Mid Atlantic Medical Services, 547 U.S. 356, 363 (2006).

      In addition, the Court of Appeals for the Second Circuit has repeatedly held that plan

administrators may be held liable for unpaid benefits. "In a recovery of benefits claim, only the

plan and the administrators and trustees of the plan in their capacity as such may be held liable."

Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989).; see also Crocco v. Xerox

Corp., 137 F.3d 105, 107-08 (2d Cir. 1998) ("Because it is clear from the Plan documents that

Xerox was neither the designated Plan administrator nor a Plan trustee . . . it cannot be held

---

[3] At oral argument on the motion, counsel for YAI made the same representation: "At the end of the day,
if the Court orders that [the plaintiffs] are entitled to the resumption of benefits pursuant to the SERP, the
way the SERP is written as you interpret the SERP, then YAI will be required, because it is a top hat plan
and because of all the argument[s] that you raise, YAI will be required to fund the SERP according to the
way the Court has ordered it. To me that is black letter law." Transcript of Oct. 29, 2014 hearing, at
66:10-16.

liable for benefits due to Crocco under the plan."); Gates v. United Health Grp. Inc., 11 Civ. 3487 (KBF), 2012 WL 2953050, at *10 (S.D.N.Y. July 16, 2012) (citing Crocco, 137 F.3d at 107-08).

Relying on ERISA § 502(d)(2), the plaintiffs express concern that any judgment they obtain for recovery of their benefits under ERISA § 502(a)(1)(B) is limited to the assets of the Plan itself. See 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."); see also Greater Blouse, Skirt & Undergarment Assn., Inc. v. Morris, 93 Civ. 1257 (SS), 1996 WL 325595, at *4 (S.D.N.Y. June 12, 1996) (the plan administrator should not be held individually liable for unpaid benefits due – payment of benefits is "uniquely the Plan's obligation"). The district court's decision in Greater Blouse, however, predates the Court of Appeals' decision in Crocco, which supports a broader reading of Leonelli. Moreover, the Court of Appeals has specifically addressed the potential conflict between ERISA § 502(a) and ERISA § 502(d) in Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506 (2d Cir. 2002). In Chapman, the Court of Appeals reiterated that both plans and plan administrators are proper defendants under ERISA § 502(a). The court specifically noted that the idea "that benefits may be recovered against a plan administrator . . . [is] entirely consistent with the view we expressed in Leonelli and Crocco that 'the plan and the administrators and trustees of the plan in their capacity as such may be held liable.'" Id. at 510 (internal citations omitted).[4] Plaintiffs have offered no support for their concern, which would render all unfunded or partly funded top hat plans illusory and unenforceable promises.

---

[4] In Yoon v. Fordham Univ. Faculty, 173 F. App'x 936 (2d Cir. 2006), a later panel of the Second Circuit invoked ERISA § 502(d) to block an employee's benefit claim against a university defendant that funded

The circumstances of this case also do not support irreparable harm because the plaintiffs have not made sufficient allegations of wrongdoing to overcome the presumption against monetary preliminary injunctions. Though the plaintiffs disagree with the actions that the defendants have taken in relation to their benefits, there is nothing to indicate that YAI has specifically acted willfully in order to frustrate a judgment. See In re Feit, 760 F.2d at 416. Plaintiffs offer no evidence that YAI is or will be insolvent. See Brenntag, 175 F.3d at 250. Instead, Plaintiffs argue that YAI *may* lack sufficient assets to pay a judgment if Plaintiffs are successful at some point.[5] See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79-80 (2d Cir. 1990) (rejecting claim of irreparable harm absent segregation of trust funds where there was no evidence that defendant would be unable to satisfy possible judgment). Absent proof of impending insolvency, the plaintiffs face the same risk anyone faces when she brings an action: that the defendant may be unable to satisfy a judgment despite the strength of its financial position during the action. See Gladstone v. Waldron & Co., No. 98 Civ. 2038, 1998 WL 150982, at *2 (S.D.N.Y. Mar. 31, 1998) ("Courts routinely hold that conclusory assertions of defendants' financial weakness do not demonstrate a likelihood of irreparable harm.")

---

but did not administer a plan. In *dicta*, the court distinguished Chapman on the grounds that Chapman "considered only whether an unfunded plan could be removed as a defendant, not whether the party funding the plan was a proper defendant." Id. at 941, n.4. Regardless of the ultimate limitations of Chapman, it is instructive here, whereas Yoon is not because its relevant holding was only that providing funding alone—where the defendant was not the plan administrator—was insufficient to make a defendant liable for benefits.

[5] See Second Chow Decl., Ex. A ("TRO Hearing Transcript") at 9:17-20 (Plaintiffs' counsel: "[I]f you say, Mr. Rakower, year and a half from now you will get your judgment you can collect from YAI's general assets, I'm telling you, your, we have absolutely no idea what the status of those assets are going to be."); see also Pls.' Mem. Support at 2-3 ("[E]very dollar taken from the SERP Plan and Trust may be unrecoverable because YAI *may*, at the time of judgment, lack assets sufficient to satisfy its liabilities to Plaintiffs." (emphases supplied)).

There is also no showing that YAI has acted fraudulently or is acting to remove its assets from the plaintiffs' reach.[6] See Gelfand v. Stone, 727 F. Supp. 98, 100-01 (S.D.N.Y. 1989) (finding irreparable injury because of defendant's past fraudulent activities, including prior guilty pleas for false statements, and ongoing efforts to place assets outside reach of creditors). Thus, without a showing of such extraordinary circumstances and "[t]he nature of the relief sought being monetary compensation, there is no reason why [plaintiffs] cannot be made whole upon resolution of the merits." Abish v. Nw. Nat. Ins. Co. of Milwaukee, Wis., 924 F.2d 448, 453 (2d Cir. 1991).

### 2. Plaintiffs have not demonstrated an equitable interest in the defendants' assets sufficient to freeze them prior to trial

To freeze a defendant's assets prior to trial, in addition to the steps outlined *supra*, a plaintiff must also demonstrate that they have a lien or equitable interest in the property to be frozen. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). The Supreme Court has cautioned that district courts should be wary of allowing plaintiffs to make sweeping, unfounded equitable claims in order to receive this extraordinary relief. See id. at 326-27. Unlike in Gucci, where the Court of Appeals found an exception to the general bar against injunctions in cases seeking monetary relief, this is not a trademark action and plaintiffs are not seeking an accounting for *profits*. See Gucci, 2014 WL 4629049, at *7-8. Accordingly, the limitations of Grupo Mexicano still apply. Nor is this a case like Deckert v. Independence Shares Corp., 311 U.S. 282 (1940), where the plaintiffs stated a valid equitable cause of action and the defendant was insolvent and accused of fraud.

---

[6] Though the parties disagree about the validity of the amendments to the SERP, this is an issue to be addressed after the close of fact discovery, rather than at this preliminary stage.

Plaintiffs have not satisfied this burden as to their third claim for a preliminary injunction, which seeks to either enjoin the restoration of $11.2 million from YAI's general assets to the SERP Trust or to place an equitable lien or constructive trust over that sum. As held in the simultaneously filed order denying plaintiffs' motion to amend, the plaintiffs may not amend their complaint to add equitable claims under ERISA § 502(a)(3), which in fact seek a remedy at law or duplicate claims that are filed under § 502(a)(1)(B). The plaintiffs' existing equitable claim is insufficient to assert a lien or equitable interest over any of the defendants' funds. And the plaintiffs face the further problem that this proposed form of preliminary relief, much like their proposed counts under ERISA § 502(a)(3) in the proposed Fourth Amended Complaint, fails to identify a particular fund, instead targeting the defendants' general assets. As explained more fully in the order denying the motion to amend, the plaintiffs are not entitled to enjoin the restoration of funds from YAI's general assets to the Trust or to place a constructive trust over such funds. Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-14 (2002) ("[F]or restitution to lie in equity, the action generally must seek . . . to restore to the plaintiff *particular* funds or property in the defendant's possession." (emphasis supplied)). Because the plaintiffs seek the type of legal relief sought in Knudson, the "strict tracing rules" of common law apply, see Sereboff, 547 U.S. at 364 (2006), and plaintiffs have not satisfied those rules. See also, e.g., Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co., No. 13-4834-cv, 2014 WL 5904900, at *4-*7 (2d Cir. Nov. 14, 2014) (plaintiff may not seek compensation from defendant's general assets under ERISA § 502(a)(3), and, absent equitable lien by agreement, must satisfy tracing rules on particular assets); De Pace v. Matsushita Elec. Corp., 257 F. Supp. 2d 543 (E.D.N.Y. 2003) (citing Knudson for the proposition that a plaintiff's claims are at law when she or he seeks restitution of property or

funds that have been dissipated, and that such restitution cannot be sought through imposition of a constructive trust or equitable lien); Neidich v. Estate of Neidich, 222 F. Supp. 2d 357, 375 (S.D.N.Y. 2002) ("The money already dispersed to [defendants] can not be recovered in equity pursuant to ERISA, § 502(a)(3), because these disbursements can no longer be traced to a particular fund.").

### B. Plaintiffs also have not demonstrated the other elements required for a preliminary injunction

Though "[a] showing of irreparable harm is essential to the issuance of a preliminary injunction," Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995), see also Buckingham Corp., 762 F.2d at 262, the Court will briefly consider the other factors at issue in a motion for a preliminary injunction or a temporary restraining order. To be successful, a movant must show likelihood of success on the merits or a balance of hardships in their favor. Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 215 (2d Cir. 2012).

Plaintiffs have not demonstrated a likelihood of success on the merits. Rather, their motion to add new equitable claims to the Third Amended Complaint has been denied. The remaining claims do not support a preliminary injunction. Serious questions of fact remain regarding the plaintiffs' claims and what constitutes the *status quo ante*, particularly given the wide disagreement over (1) the validity of the SERP amendments and (2) the value of benefits owed the plaintiffs, which range from the plaintiff's claim of at least $11.6 million as of July 1, 2009, to the defendants' contention that such benefits total no more than $929,200. Given this wide disparity, it would be difficult to predict at this stage of the litigation what amount is truly at issue, and it would be inequitable (in common parlance) to allow the plaintiffs to freeze $11.2 million from the defendants' general assets for what may amount to a claim for a considerably smaller sum.

Nor have the plaintiffs demonstrated that the balance of hardships tips squarely in their favor. YAI is a non-profit which relies on government funding. Freezing such a large portion of its general funds would likely hamper or prevent YAI from providing ongoing, needed services to developmentally disabled adults and their families. In comparison, the plaintiffs have not demonstrated how they suffer any *immediate* hardship absent the relief they seek. The plaintiffs have not received benefits from the Trust since 2011, and have not sought by preliminary injunction the resumption of such benefits. Their only "hardship" is the possibility that there will be no assets to satisfy a judgment in the future, a concern that is mere speculation without basis.

Both parties cite to New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010), for the proposition that a preliminary injunction must also not disserve the public interest. The Court of Appeals has held that a district court, in a case outside of trademark law, need not consider the public interest as a factor in preliminary injunctions cases. Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 38 (2d Cir. 2010) (the Second Circuit's "serious questions" standard was not overturned by the Supreme Court). To the extent that there remains any disagreement on this issue,[7] the Court briefly mentions that plaintiffs also have not demonstrated that the preliminary relief they seek would be in the public interest. Though the public does have an interest in ensuring that employers follow their duties under ERISA, the SERP is a "top hat" plan, which

---

[7] See New York City Triathlon, LLC, 704 F. Supp. 2d at 328 ("The Court understands Salinger [v. Colting, 607 F.3d 68 (2d Cir. 2010)] as indicating that the standard for injunctive relief historically applied in this jurisdiction must be abandoned in favor of the one articulated by the Supreme Court (whose mandates we are all bound to follow) in eBay [Inc. v. MercExchange, 547 U.S. 388, (2006)]. The Court can think of no reason why the standards for injunctive relief articulated by the High Court in a copyright infringement case might not apply in a trademark infringement case. Accordingly, this Court analyzes New York City Triathlon LLC's claims by applying the five-fold test of eBay and Salinger."); Rex Med. L.P. v. Angiotech Pharm. (US), Inc., 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010) ("As this Court explained in New York City Triathlon, LLC . . . I believe that eBay requires the use of the Supreme Court's four-factor test in every case. Accordingly, this Court analyzes Rex's request for a preliminary injunction by applying the four-factor test of eBay and Salinger.").

provides benefits to executives able to negotiate on their own behalf and thus is exempt from many ERISA protections. See Gallione v. Flaherty, 70 F.3d 724, 727 (2d Cir. 1995) ("Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations." (citation omitted)). YAI, meanwhile, is a government-regulated non-profit entity that claims it is attempting to comply with regulators. After a New York Times article highlighted the plaintiffs' compensation,[8] the New York State Office for People with Developmental Disabilities, the state agency which oversees YAI, placed it on "Early Alert" status, which authorized OPWDD to (1) monitor YAI, (2) "not consider any requests for expansion of services," (3) determine whether "YAI has the ability to remedy the deficient practices and sustain compliance," and (4) potentially "suspend any expansion that is in process." Second Chow Decl. Ex. I ("Early Alert Letter") at 1.[9] Given the threat to YAI's provision of services, it is not at all clear that the public interest lies with the plaintiffs' supplemental executive compensation packages.

### C. Plaintiffs are not entitled to expedited discovery

Plaintiffs have not met the burden for expedited discovery under either of the Second Circuit standards. The plaintiffs seek expedited discovery as to IDB Bank's resignation from its role as SERP Trustee and "the full amount wrongfully taken from the SERP." Pls'. Mem. Support 17. The four-factor Notaro test largely mirrors the test for a preliminary injunction, and plaintiffs fail to meet those same factors here for the reasons stated above: they have not shown irreparable injury or likelihood of success on the merits, both of which are necessary to receive

---

[8] Russ Buettner, *Reaping Millions in Nonprofit Care for Disabled*, N.Y. TIMES (Aug. 2, 2011), http://www.nytimes.com/2011/08/02/nyregion/for-executives-at-group-homes-generous-pay-and-little-oversight.html.
[9] See id. ("[O]ur concerns remain and are in fact heightened by recent disclosures on executive compensation at YAI. These reports all calls [sic] into question the agency's board governance and appropriate use of public funds. As a result we are now placing your agency on Early Alert.")

this type of relief. See Notaro, 95 F.R.D. at 405. These same flaws in the plaintiffs' arguments also render their request unreasonable under the circumstances, thus foreclosing relief under the other test used in this circuit. See Evergreen Distributors,, 293 F.R.D. at 367.

**CONCLUSION**

For the reasons discussed above, plaintiffs' motion for a preliminary injunction should be DENIED.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            November 21, 2014

20