UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
JOEL M. LEVY and JUDITH W. LYNN,    :      13-CV-2861 (JPO)
:
                    Plaintiffs,     :      OPINION AND ORDER
                                    :      ADOPTING REPORT AND
         -v-                        :      RECOMMENDATION
                                    :
YOUNG ADULT INSTITUTE, INC., et al.,:
                                    :
                    Defendants.     :
                                    :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiffs Joel M. Levy and Judith W. Lynn (together, "Plaintiffs") have asserted claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and state law against the Young Adult Institute, Inc. ("YAI"), of which Levy is a former executive, and against other defendants (collectively, "Defendants"). YAI has answered the operative complaint and filed counterclaims against Levy for breach of fiduciary duty and for acting as a faithless servant. Now before the Court is the report and recommendation ("Report") of the Honorable Sarah Netburn, U.S. Magistrate Judge, on Levy's motion to dismiss YAI's counterclaims, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Report recommends that the motion be denied. For the reasons that follow, the Report is adopted, Plaintiffs' objections are overruled, and Levy's motion is denied.

1

I.    **Background**[1]

Plaintiffs filed their third amended complaint on June 19, 2014. (Dkt. No. 104.) On June 30, 2014, Defendants answered the complaint, and YAI asserted counterclaims against Levy. (Dkt. No. 105 ("Counterclaims").) Levy moved to dismiss the counterclaims.[2] (Dkt. No. 168.) YAI opposed the motion (Dkt. No. 126), and Levy replied (Dkt. No. 171). Judge Netburn filed the Report on January 14, 2015. (Dkt. No. 179 ("Report").) Levy filed an objection to the Report on February 2, 2015 (Dkt. No. 188 ("Objection")), and YAI opposed Levy's objection on February 19, 2015 (Dkt. No. 196 ("Opposition")). The Court denied YAI's request that discovery on its counterclaims be stayed pending the Court's consideration of Levy's objection. (Dkt. Nos. 190, 192.)

II.   **Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1), a district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." The district court reviews a magistrate judge's report "strictly for clear error when no objection has been made," but "will make a *de novo* determination regarding those parts of the Report to which objections have been made." *Coach, Inc. v. O'Brien*, No. 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276, at *1 (S.D.N.Y. Apr. 13, 2012) (citing *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009)). "In order to merit de novo review, a party's objections must be specific rather than conclusory or general."

---

[1] YAI's allegations in support of its counterclaims are set out in the Report, familiarity with which is assumed. (*See* Dkt. No. 179 ("Report") at 1-8.) The background of the case is referenced only as necessary to explain the Court's decision on Levy's motion to dismiss.

[2] The docketing of Levy's motion to dismiss was delayed to allow the parties to redact portions of certain documents relating to the motion.

*DeJesus v. Comm'r of Soc. Sec.*, No. 13 Civ. 2251 (AJN) (HBP), 2014 WL 5040874, at *1 (S.D.N.Y. Sept. 29, 2014).

### III. Discussion

#### A. Business Judgment Rule

Under New York law, the business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett*, 393 N.E.2d 994, 1000 (N.Y. 1979); *see also Treadway Cos. v. Care Corp.*, 638 F.2d 357, 382 (2d Cir. 1980) ("Under the business judgment rule, directors are presumed to have acted properly and in good faith . . . ."). The rule's principles are reflected in a section of the statutory law governing corporations, New York Business Corporation Law § 717. *See Lindner Fund, Inc. v. Waldbaum, Inc.*, 624 N.E.2d 160, 161 (N.Y. 1993) (recognizing that New York's business judgment rule provides that corporate officers must "perform their duties 'in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances'" (quoting N.Y. Bus. Corp. Law § 717(a)). An analogous statute, New York Not-for-Profit Corporation Law § 717, governs the directors and officers of nonprofit corporations. *See* N.Y. Not-for-Profit Corp. Law [hereinafter "N-PCL"] § 717(a) (providing that "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances"); *see also S.H. & Helen R. Scheuer Family Found., Inc. v. 61 Assocs.*, 582 N.Y.S.2d 662, 665 (App. Div. 1st Dep't 1992) ("[I]t is well established that, as fiduciaries, board members [of a not-for-profit corporation] bear a duty of loyalty to the corporation and may not profit improperly at the expense of their corporation." (internal quotation marks omitted)).

"It is black-letter, settled law that when a corporate director or officer has an interest in a decision, the business judgment rule does not apply." *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995) (citing, *inter alia*, *Alpert v. 28 Williams St. Corp.*, 473 N.E.2d 19, 26 (N.Y. 1984)); *see also Treadway*, 638 F.2d at 382 (stating that directors "are called to account for their actions only when they are shown to have engaged in self-dealing or fraud, or to have acted in bad faith"). As the Report states, it is improper to dismiss a suit at the motion to dismiss stage on the basis of the business judgment rule if the plaintiff's pleadings allege that directors or officers did not act in good faith. (*See* Report at 24 (citing, *inter alia*, *Ackerman v. 305 E. 40th Owners Corp.*, 592 N.Y.S.2d 365, 367 (App. Div. 1st Dep't 1993)).)

The Report concludes that YAI's counterclaims should proceed because they allege that "Levy was a faithless servant and breached his fiduciary duties, resulting in harm to YAI through the loss of money unfairly paid to Levy and through the investigation, endangerment of services[,] and settlement paid by YAI." (Report at 25.) Levy objects, arguing that the business judgment rule and N-PCL § 717 shield him from the counterclaims because the decisions concerning his compensation were made not by him, but by YAI's Board of Trustees (the "Board"), whose members were not interested in those decisions. (Objection at 8-10.) Levy's argument is without merit.

YAI's counterclaims challenge *Levy's* actions, not those of the Board. Levy is alleged to have knowingly certified inaccurate financial documents and otherwise placed the corporation's legal and financial status in jeopardy through his actions. Moreover, while it is true that the counterclaims place the propriety of Levy's compensation in question, YAI does not contend that the source of the impropriety is that the members of the Board had a financial stake in the compensation decisions. Rather, YAI alleges, Levy "skew[ed] the information provided to the Board, causing the Board to grant him excessive and unreasonable compensation based on false

information." (Counterclaims ¶ 23.) Levy allegedly did this through a "multi-faceted scheme," including drafting "in substantial part" YAI's 1999 Compensation Philosophy and directing the Board to "retain specific compensation consultants which he believed he could convince to bless his excessive compensation levels." (*Id.* ¶¶ 25-26, 29.) Furthermore, and most significantly, Levy "repeatedly made false representations to the Board and its committees . . . concerning YAI's financial performance," which was "a significant factor in the Board's compensation decisions." (*Id.* ¶ 30.)[3]

Levy argues that YAI's claims are foreclosed by the business judgment rule, which generally requires the dismissal of claims "premised upon . . . decisions made by officers and directors," unless it is alleged that those officers and directors lacked independence or good faith. (Objection at 8.) Accepting the allegations of the counterclaims as true, however, the Court must assume that the Board relied on *Levy's* financial misconduct in their decisions on his compensation. The basis for YAI's claims is not an assertion that the Board's decisions were "unwise or inexpedient," as Levy argues (Objection at 11)—a theory which would properly be barred by the business judgment rule. Instead, YAI asserts that Levy's misstatements of YAI's financial performance—on which the Board is alleged to have relied—may have led Levy to be

---

[3] As further described below, at the core of YAI's claims that Levy acted as a faithless servant and breached his fiduciary duties are allegations of accounting improprieties that Levy engineered and then hid from the Board. Levy's alleged accounting improprieties included misstating YAI's costs and falsely certifying YAI's Consolidated Fiscal Reports ("CFRs")—financial statements that YAI submitted to New York regulators—which permitted YAI to receive inflated Medicaid reimbursements. (Counterclaims ¶¶ 66, 71-75.) YAI claims "[o]n information and belief" that "Levy knew that YAI's CFRs contained misstatements and re-allocations designed to increase appeal awards and reimbursement rates." (*Id.* ¶ 77.) Further, YAI asserts, Levy's reports to the Board overstated YAI's financial performance by including these inflated figures. (*Id.* ¶ 79.) Levy "failed to inform the Board that millions of dollars of YAI's income resulted from improper accounting practices," and "[a]t no time was the Board ever told that there were misstatements in the CFRs or inappropriate re-allocations of costs." (*Id.* ¶¶ 83, 85.) Significantly, the "growth and financial performance" of YAI "was a significant factor in the Board's compensation decisions." (*Id.* ¶ 87.)

5

compensated more substantially than he otherwise would have been.  (*See* Counterclaims ¶ 87.)  For this reason, the fact that a disinterested Board voted on the compensation decisions cannot insulate Levy from YAI's claims.  *Cf.* N.Y. Bus. Corp. Law § 713(a)(1) (permitting transactions involving interested directors upon approval by a disinterested board, but only where the material facts regarding the interest at stake are disclosed to the board).  Accordingly, Levy's objection on this basis is overruled.

### B. Rule 9(b)

The Report concludes that YAI's counterclaims do not sound in fraud, and therefore, that they need not meet the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure.  (Report at 12-22.)  Levy objects, arguing that YAI's counterclaims do sound in fraud because they assert that Levy "induced the Board to award him compensation based on false statements."  (Objection at 14.)  The Court does not need to reach this potentially thorny question, because even assuming that Rule 9(b) applies, the counterclaims satisfy its requirements.

Rule 9(b) requires that allegations of fraud or mistake "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "A complaint making such allegations must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal quotation marks and brackets omitted).  The parties divide Levy's alleged scheme into four "stages."  The stages that may sound in fraud are Levy's knowing certification of falsified CFRs and his subsequent misstatements to the Board about YAI's financial condition.[4]  Even if YAI's

---

[4] The other two stages involve YAI's allegations that Levy drafted a "substantial part" of YAI's 1999 Compensation Philosophy and "exerted considerable influence" in choosing compensation

6

counterclaims must be pleaded with particularity, the counterclaims contain sufficient detail as to the circumstances of the alleged fraud to permit these claims to proceed under Rule 9(b).

### 1. CFRs

YAI alleges that Levy repeatedly certified that the CFRs from fiscal years 1999-2000 through 2007-2008 were correct even though he knew they contained misstatements. (Counterclaims ¶¶ 73, 77.)  The statements within the CFRs from this time period claimed to be fraudulent are particularized in the False Claims Act ("FCA") complaint filed in a related case, which is incorporated by reference in YAI's counterclaims.[5]  (Counterclaims ¶ 72; *see* Complaint-in-Intervention of the United States of America ¶¶ 21-56, *United States ex rel. Faden v. Young Adult Institute, Inc.*, No. 09 Civ. 5003 (RMB), Dkt. No. 21 [hereinafter "FCA Complaint"].)  The FCA Complaint states that the CFRs "falsely allocated certain employees' personal-services expenses on Schedule CFR-4," which "increase[d] the potential [Medicaid] appeals that could be submitted for the facilities affected."  (FCA Complaint ¶¶ 26-27; 29-30.)  The CFRs also "falsely categoriz[ed] certain of the personal-services expenses for its employees . . . as 'clinical care' rather than 'program administration,' which artificially increased YAI's eligibility for appeals funds," based on certain "position title codes" set out in Appendix R to the manual for completing the CFRs.  (*Id.* ¶¶ 33-34; *see also id.* at 35-46.)  Finally, the CFRs

---

consultants.  (*See* Report at 18-19.)  The Court concludes that these two stages clearly do not sound in fraud, as they do not involve allegations of false or misleading statements.  *See Rombach v. Chang*, 355 F.3d 164, 172-73 (2d Cir. 2004).

[5] *See United States v. Bank of N.Y. Mellon*, 941 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) (stating that a district court considering a Rule 12(b)(6) motion "may rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint" (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011)) (internal quotation marks omitted)); *see also Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10 Civ. 3291 (NGG) (SMG), 10 Civ. 3354 (NGG) (SMG), 2012 WL 1372260, at *22 (E.D.N.Y. Apr. 18, 2012) (concluding that "although the section of [the complaint] devoted specifically to fraud is somewhat sparse, the factual allegations incorporated by reference into that section" sufficed to satisfy Rule 9(b)).

"claimed excessive Medicaid compensation by falsely categorizing the personal-services expenses of its fund-raising staff . . . as 'agency administration' rather than in the separate column designated for non-reimbursable expenses, which artificially increased YAI's eligibility for appeals funds." (*Id.* ¶ 47.) The fundraising expenses were included in the "agency administration" section of Schedule CFR-3, rather than in the "Other Programs" section of Schedule CFR-2, column 7, even though the CFR manual clearly prohibited this. (*Id.* ¶¶ 48, 50.)

The counterclaims allege that Levy certified the relevant CFRs although he "knew that [they] contained misstatements and re-allocations designed to increase appeal awards and reimbursement rates," and that he also confirmed that the CFRs were supported by documentation, even though this was "blatantly false" and Levy knew such records did not exist. (Counterclaims ¶¶ 73-78.) These details suffice to put Levy on notice as to the circumstances constituting fraud, including the statements at issue, the party who issued them, when and where they were made, and why they are fraudulent. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

### 2. Statements to the Board

YAI alleges that Levy "made reports on YAI's financial performance and growth to the Board," which reports were "based in part on the misstatements in the CFR[s]." (Counterclaims ¶ 79.) Levy knew that the misrepresentations in the CFRs allowed YAI to receive inflated Medicaid payments, and accordingly, Levy also knew that the financial figures he provided to the Board were overstated. YAI alleges that Levy made such a misstatement of YAI's financial performance at a meeting of the Executive Compensation Committee of the Board on November 24, 2008. (*Id.* ¶¶ 80-81.) But Levy "failed to inform the Board that millions of dollars of YAI's income resulted from improper accounting practices." (*Id.* ¶ 85.) Further, at a December 2002 meeting, Levy "explained and answered questions on the rate appeal process" for the Board

without revealing that "there were misstatements in the CFRs or inappropriate re-allocation of costs to inflate artificially the amount YAI could recover in rate appeals." (*Id.* ¶¶ 82-83.)

As above, the allegations in the counterclaims sufficiently set out the circumstances constituting fraud, including the speaker, when and where they were made, and why the statements are alleged to be fraudulent. *See Lerner*, 459 F.3d at 290. Accordingly, Levy's objection based on Rule 9(b) is overruled, and the motion to dismiss on this ground is denied.

### C.   Statute of Limitations

Levy asserts that the breach of fiduciary duty claim is barred by the New York statute of limitations. (Objection at 18-21.) The Report notes that Levy only raised the issue "[i]n a footnote in his reply brief" (Report at 11; *see* Dkt. No. 171, at 3 n.2), and Judge Netburn ultimately declined to rule on the issue on the grounds that (1) arguments generally may not be made for the first time in reply briefs; (2) arguments that are "drastically underdeveloped" may be considered not to have properly raised an issue; and (3) the discovery on the fiduciary duty claim would duplicate the faithless servant discovery, and accordingly dismissal would not inure to the benefit of judicial economy (Report at 11-12).

#### 1.   Argument Not Properly Presented to the Magistrate Judge

The question "[w]hether a party may raise a new legal argument . . . for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit." *Amadasu v. Ngati*, No. 05 Civ. 2585 (RRM) (LB), 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). Some courts in this circuit have stated, as a general matter, that "a party waives any arguments not presented to the magistrate judge." *Watson v. Geithner*, No. 11 Civ. 9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013) (emphasis omitted). Others have applied a multi-factor test to determine whether a district court should exercise discretion to review arguments properly raised for the first time in objections to a magistrate judge's ruling.

*See, e.g.*, *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *6 & n.5 (S.D.N.Y. Aug. 25, 2011) (citing *Wells Fargo Bank N.A. v. Sinnott*, No. 07 Civ. 169 (CR), 2010 WL 297830, at *2 (D. Vt. 2010)).

The Second Circuit has expressed skepticism regarding the proposition that district courts lack discretion to consider an issue first raised in a reply brief. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001). For reasons parallel to those set out in *Booking*, the Court concludes that it is at least within the discretion of the district court to consider arguments not presented (or not properly presented) to the magistrate judge in connection with a report and recommendation. This determination has particular force in cases like this one, where both parties have had an opportunity at the objection stage to fully brief the issue. Accordingly, the Court will apply the test used by some courts in this circuit to determine whether to consider Levy's statute of limitations argument.

The test analyzes the following six factors:

> (1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new legal issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered.

*Amadasu*, 2012 WL 3930386, at *5 (citing *Wells Fargo*, 2010 WL 297830, at *4). First, Levy maintains that he did not raise the argument earlier because he did not anticipate that YAI would contest the applicability of Rule 9(b), and would instead contest only whether the claims met the Rule 9(b) standard. (Objection at 19-20.) The record on this point is not particularly supportive of Levy's interpretation, given that his briefing separately addressed the issue of the applicability of Rule 9(b) rather than focusing only on whether the rule's requirements were satisfied. (*See*

Dkt. No. 169, at 10-12.)  Second, there has been no intervening change in the law.  Third, the new issue Levy raises is purely a question of law for which no additional factfinding is required.  Fourth, as set forth below, the resolution of the legal issue is not open to serious question.  Fifth, efficiency and fairness militate in favor of considering the argument here.  While it would have been preferable for Levy to have properly raised the statute of limitations issue before Judge Netburn so that this Court would have the benefit of her recommendation, the parties have now fully briefed the issue.  And sixth, there appears to be little risk of manifest injustice even if the Court does not consider the issue here, as a statute of limitations defense could presumably be raised in Levy's answer to the counterclaims.  *See Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) ("[T]he statute of limitations defense need not be raised in a pre-answer motion.  Rather, under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading." (internal quotation marks omitted)).

Upon analysis of these divergent factors, the Court concludes that it will exercise its discretion to consider Levy's statute of limitations challenge on the merits.  This determination rests principally on the fact that the resolution of the issue at this stage will be most efficient.  Levy's argument rests on a pure question of law whose resolution is not open to serious question, and no further factual development or briefing is necessary for the analysis of the applicable statute of limitations.

### 2. Merits

Levy contends that the breach of fiduciary duty claim is time barred because it is subject to a three-year statute of limitations.  (Objection at 19.)  YAI replies that the claim is instead governed by a six-year statute of limitations.  (Opposition at 12-13.)  It is undisputed that the claim is not barred if the six-year period applies: the parties both assert that the statute of

limitations began to run (at the earliest) at some point in 2009, and YAI's claim was filed in May 2014.  (*See* Objection at 19; Opposition at 13.)

Levy's statute of limitations challenge depends on a quirk of New York law, which calls for either a three-year or a six-year limitations period for a breach of fiduciary duty claim depending on certain characteristics of the claim.  The rule that governs for the standard claim of breach of fiduciary duty is that "the applicable limitations period depends on the substantive remedy that the plaintiff seeks."  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009).  If the remedy sought is "purely monetary," a three-year limitations period applies, but if the complaint seeks equitable relief, a six-year limitations period applies.  *Id.* (citing N.Y. C.P.L.R. 213(1), 214(4)).

Two more specific rules supplant the general rule in particular circumstances, however.  First, under New York Civil Practice Law and Rules ("CPLR") 213(7), an action by a corporation against one of its directors (or former directors) for breach of fiduciary duty is subject to a six-year limitations period.  *See In re 1st Rochdale Coop. Grp., Ltd.*, No. 07 Civ. 7852 (DC), 2008 WL 170410, at *3 (S.D.N.Y. Jan. 17, 2008) ("[A] six-year statute of limitations applies to claims on behalf of a corporation against its officers and directors for breach of fiduciary duty."); *accord In re Gen. Vision Servs., Inc.*, 423 B.R. 790, 793 (S.D.N.Y. 2010) ("[C]laims seeking damages for breach of fiduciary duty may be subject to the six-year limitations period, under CPLR 213(7), where they are asserted in an action by or on behalf of a corporation against a present or former director, officer or stockholder to recover damages . . . for an injury to property.").  Second, claims of "breach of fiduciary duty based on fraud are generally subject to six-year statutes of limitations."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 & n.3 (2d Cir. 2013) (citing N.Y. C.P.L.R. 213(8)).

The Court concludes that the six-year period set out in CPLR 213(7) clearly applies to YAI's breach of fiduciary duty claim. In the category of suits by corporations against directors, CPLR 213(7) "applies to all actions, with no differentiation between legal and equitable claims." *Roslyn Union Free Sch. Dist. v. Barkan*, 950 N.E.2d 85, 89 (N.Y. 2011) (internal quotation marks and alteration omitted) (concluding that a corporation's claim against a former director for breach of fiduciary duty was governed by a six-year statute of limitations). Furthermore, where CPLR 213(7)'s "specific language . . . encompasses a particular claim, it supplants the general three-year rule" that applies to other actions for injury to property. *Id.* at 88; *accord Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 741-42 (S.D.N.Y. 1997) ("Section 213(7) supplants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer or shareholder.").

Here, YAI—a not-for-profit corporation—brings this suit for an injury caused by an alleged breach of fiduciary duty by Levy, the corporation's former Chief Executive Officer. Accordingly, this cause of action falls squarely under the six-year period provided under CPLR 213(7) for the claims of corporations against their former directors or officers. The breach of fiduciary duty claim is therefore timely, and the motion to dismiss on this ground is denied.

**IV.   Conclusion**

For the foregoing reasons, Plaintiffs' objections to the Report are OVERRULED following the Court's de novo review. The Court has also reviewed the portion of the Report to which Plaintiffs did not specifically object and concludes that it is not clearly erroneous.[6] Accordingly, Magistrate Judge Netburn's Report and Recommendation is ADOPTED, and Levy's motion to dismiss YAI's counterclaims is DENIED.

---

[6] Levy did not object to the Report's proper conclusion that the Court has diversity jurisdiction over YAI's counterclaims. (Report at 25.)

The Clerk of the Court is directed to close the motion at docket number 168.

SO ORDERED.

Dated: April 30, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge