```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
  JOEL M. LEVY and JUDITH W. LYNN,            :
                                              :
                              Plaintiffs,     :
                                              :         13-CV-2861 (JPO)
                 -v-                          :
                                              :         OPINION AND ORDER
  YOUNG ADULT INSTITUTE, INC., et al.,        :
                                              :
                              Defendants.     :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiffs Joel M. Levy and Judith W. Lynn brought this action against Young Adult Institute, Inc., d/b/a YAI National Institute for People with Disabilities ("YAI"), the Board of Trustees of YAI ("the Board"), the Pension Retirement Committee of the Board, the Supplemental Pension Plan and Trust for Certain Management Employees of YAI, and the Life Insurance Plan and Trust for Certain Management Employees of YAI (collectively "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, seeking to recover benefits due under YAI's supplemental executive retirement plan ("SERP").

Familiarity with this case and with its lengthy history is presumed. A bench trial was held in this matter, beginning on November 15, 2016, and concluding on November 22, 2016. The Court issued a ruling from the bench. This Opinion and Order addresses the Defendants' motion for reconsideration of this Court's bench ruling and several outstanding matters relevant to the final judgment in this case.

**I.    Motion for Reconsideration**

In its bench ruling of November 22, 2016, this Court employed a test articulated under New York law to determine whether Defendants had materially breached the Acknowledgment and Release ("A&R"). Specifically, the Court, quoting from *Innovative Biodefense, Inc. v. VSP Techs., Inc.*, 176 F. Supp. 3d 305, 317 (S.D.N.Y. 2016), looked at five factors in considering whether the A&R had been materially breached:

> (a) "the ratio of the performance already rendered to that unperformed";
>
> (b) "the quantitative character of the default";
>
> (c) "the degree to which the purpose behind the contract has been frustrated";
>
> (d) "the willfulness of the default"; and
>
> (e) "the extent to which the aggrieved party has already received the substantial benefit of the performance."

(Trial Tr. 1060:5-13 (quoting *Innovative Biodefense*, 176 F. Supp. 3d at 317).)

Following the Court's ruling that Defendants had materially breached the A&R, Defendants filed a motion for reconsideration, arguing that the Court should have applied federal common law, rather than New York law, in evaluating whether the contract had been materially breached, due to preemption under ERISA. (*See* Dkt. No. 608 at 1.)

The relevant factors endorsed by Restatement (Second) of Contracts § 241, which Defendants urge the Court to apply in this case, are as follows:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

(Dkt. No. 608 at 1-2 (quoting Restatement (Second) of Contracts § 241).) Because this standard for materiality is "flexible," the Restatement insists that it describes only "circumstances, not rules, which are to be considered in determining whether a particular failure is material." Restatement (Second) of Contracts § 241 cmt. a.

"A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quoting *In re Initial Public Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005)). To prevail, the movant must demonstrate: "(1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (quoting *Drapkin*, 818 F. Supp. 2d at 696). Ordinarily, the third showing—advanced by Defendants here—requires the movant to demonstrate that the Court overlooked controlling law such that the conclusion reached by the court would be altered were it to apply the overlooked law. *See Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, No. 09 Civ. 6273, 2012 WL 841154, at *1 (S.D.N.Y. Mar. 9, 2012).

But applying the Restatement factors urged by Defendants would not alter the Court's analysis or the result of its bench ruling.

As an initial matter, courts have described New York law and Restatement § 241 as embodying the *same* test and approach. *See, e.g.*, *Wechsler v. Hunt Health Sys., Ltd.*, 330 F.

3

Supp. 2d 383, 414 (S.D.N.Y. 2004). Thus, it is unsurprising that the Court, in reaching its decision, relied on cases that, in turn, incorporated and relied upon the Restatement. (*See, e.g.*, Trial Tr. at 1062:6-7 (citing *Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 67 (S.D.N.Y. 1990)).)

However, even crediting Defendants' argument that the Restatement test is legally distinct from the one utilized by this Court, application of the Restatement factors to the facts of the case, as the Court found them, does not alter the result.

Considering the first Restatement factor, the degree to which the injured party is deprived of the expected benefit of his bargain, the Court found that "Joel Levy testified credibly that the most important part of the compromise from his perspective was YAI's renewed commitment to pay out his benefits under the SERP." (Trial Tr. at 1061:13-15.) Thus, "[l]ooking to the ratio of performance rendered to that unperformed and the quantitative character of the default . . . YAI has performed less than one-third of its payment obligation under the contract, leaving Levy out over $3 million for now more than five years." (Trial Tr. at 1062:14-19.) Based in large part on this factual finding, the Court determined that Plaintiffs "did not receive a substantial benefit of the compromise under the A&R and that the purpose of the compromise has been frustrated." (Trial Tr. at 1062:20-22.) This factor, then, weighs heavily in favor of material breach.

The second Restatement factor considers "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." Restatement (Second) of Contracts § 241. In light of the Court's finding that Levy signed the A&R out of an overwhelming desire to have "peace of mind" as to the regular flow of payments (Trial Tr. at 1067:5), Defendants' failure to carry out their end of the bargain caused injury to Levy that cannot be undone. This factor, too, counsels for a finding of material breach.

4

As to the fifth Restatement factor, the "good faith" of the breaching party, this Court found, as a matter of fact, that "YAI was not required by any regulator or by anybody else to cease its payments to Levy—that decision was YAI's own choice." (Trial Tr. at 1065:18-20.) To that end, the Court found that YAI Defendants did not act in "good faith" in ceasing payments to Levy, insofar as the facts revealed that "the breach was willful in the legal sense," that is, "in disregard of Levy's contractual rights." (Trial Tr. at 1066:6-8.) This factor, then, also tips in favor of material breach.

And this same finding of fact as to the willfulness of the breach supports a conclusion that the breach of the A&R was material under the fourth Restatement factor—the likelihood that the breaching party will "cure his failure." Restatement (Second) of Contracts § 241.

Defendants argue that the third factor, the harm to the breaching party, cuts in their favor. Even if this is true, however, it does not change the outcome, as, on balance, the breach "go[es] to the root of the agreement between the parties." *Frank Felix Assocs. Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (quoting *Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989)).

Crediting Defendants' argument that the Court should have applied different factors to evaluate materiality does not alter the ultimate conclusion that Defendants materially breached the A&R. For this reason, Defendants' motion for reconsideration is denied.

## II. Additional Post-Trial Issues

At the close of its bench ruling, the Court invited the parties to submit post-trial briefing on several outstanding questions affecting the amount and form of the final judgment. The Court addresses each of these issues in turn.

5

### A. The Interest Rate for Past-Due Payments

The Court invited the parties to weigh in on the appropriate interest rate to apply to payments past-due to Levy. Defendants concede that, under Second Circuit law, Plaintiffs are entitled to "some amount of prejudgment interest" on the SERP benefits not paid between August 2011 and the date of a final judgment; Defendants ask that the Court apply the federal prime rate. (Dkt. No. 597 at 11.) Plaintiffs, for their part, ask for New York's statutory rate of 9% interest or, in the alternative, 5% interest, on the basis of a term contained in the original SERP. (*See* Trial Tr. 760:2-23.)

Courts award prejudgment interest under ERISA where it is fair and necessary to adequately compensate the aggrieved party. *See Mendez v. Teachers Ins. & Annuity Ass'n & Coll. Ret. Equities Fund*, 982 F.2d 783, 790 (2d Cir. 1992). "In exercising such discretion, the court is to take into consideration '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (quoting *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir.1996)). "[T]he rate of interest used in awarding *prejudgment* interest rests firmly within the sound discretion of the trial court." *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 311 (2d Cir. 1987). "[T]he aim of the relief awarded is to make the plaintiffs whole, but not to give them a windfall." *Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 875, 899 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995).

Applying the guiding factors articulated by the Second Circuit, the Court declines to calculate interest using the state statutory rate. As regards the first and second considerations—

the need to fully compensate Plaintiffs and considerations of fairness, *Jones*, 223 F.3d at 139 ("[T]he same considerations that inform the court's decision whether or not to award interest at all should inform the court's choice of interest rate . . . .")—the Court is mindful of its finding that, while Defendants were not lawfully permitted to renege on their financial commitments to Plaintiffs based on hindsight regret, YAI was experiencing a public-relations nightmare and, in deciding to cut Levy's benefits, was trying to claw its way out of a difficult situation. As a result of this factual finding, the Court finds that it is fair and adequately compensatory for Defendants to pay the lower, federal prime rate.

Turning to the third and fourth factors (the purpose of the statute and other general principles relevant to the determination), the Court follows the example of others in this District, concluding that because of low interest rates in recent years, "applying a 9 percent rate would provide a windfall to Plaintiff and would serve to punish Defendant, in contravention of the compensatory goal of ERISA." *Barrett v. Hartford Life & Accident Ins. Co.*, No. 10 Civ. 4600, 2012 WL 6929143, at *2 (S.D.N.Y. Nov. 9, 2012); *see also Doe v. Unum Life Ins. Co. of Am.*, No. 12 Civ. 9327, 2016 WL 749886, at *1 (S.D.N.Y. Feb. 23, 2016) ("Inasmuch as no statute compels use of the decades-old statutory New York State law rate of interest, which is so much higher than the cost of borrowing in recent times, this Court declines to use it here. Rather, it applies something more closely resembling current and recent borrowing costs, i.e., 4 percent."); *Algie*, 891 F. Supp. at 899 ("[T]he federal rate is more appropriately used here since it provides a closer approximation of the likely return on plaintiffs' unpaid benefits."). And, as in *Mallon v. Zurich Am. Ins. Co.*, No. CIV. 3:04CV1267, 2006 WL 2223930, at *3 (D. Conn. Aug. 1, 2006), Plaintiffs have not "proffered any evidence" specifically supporting the appropriateness of the

9% statutory rate given alternative likely investments. These factors, too, counsel for the use of the lower federal prime rate in lieu of the state statutory rate.

The Court further declines to adopt the figure cited in the SERP because, as Defendants point out, the interest rate provided there is for the calculation of actuarial equivalence—that is, for determining the value of various plan assets. (*See* Dkt. No. 597 at 14.)

For the reasons articulated above, the Court finds that prejudgment interest shall be awarded at the federal prime rate.

### B. The Form of Future-Due Payments

The parties dispute the form of future payments owed. Plaintiffs argue for a lump-sum award, while Defendants argue that future payments should be made in the form of an annuity.

Relief with respect to a claim under Section 502(a)(1)(B) of ERISA is properly limited to the benefits and terms of the plan. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). To that end, this Court has been clear that it would entertain the availability of lump-sum payments only if it is provided for within the four corners of the SERP and operative amendments. (Dkt. No. 573 at 3-4.)

Plaintiffs argue, first, that the SERP was terminated and, second, that because of that termination, the Amended SERP is operative and provides for a lump-sum payment. (Dkt. No. 599 at 7.) But evidence adduced at trial demonstrated that the SERP was *not* terminated. (Trial Tr. 539:7-14; *id.* at 960:20-21.) As such, the lump-sum provision of the Amended SERP to which Plaintiffs point is not applicable.

Additionally, the lump-sum settlements Defendants have reached with others are not relevant, as they were revealed at trial to be the result of settlement negotiations (and not based upon the terms of the SERP). (Trial Tr. at 943:8-19.)

As to Plaintiffs' further argument that proposed resolutions amending the SERP permit the election of a lump-sum payout, as this Court already explained, where such minutes represent only a "resolution and never became part of the plan, then [the Court will not] find that it's part of the plan." (Trial Tr. at 125:4-11; *id.* at 135:13-22.) Moreover, even if the minutes and resolution had validly amended the SERP, Levy cannot elect a lump sum now, because he failed to elect it at the time of his requirement. *See* I.R.C. §§ 409A(a)(4)(B), (C). And, contrary to Plaintiffs' argument, Levy is not excused from the election under Treas. Reg. § 1.409A-3(j)(4)(xiv) because the award is not the product of an arm's length, bargained-for "settlement." *Id.* And this provision does not allow for any "[d]iscretion" in its application outside of these narrow parameters. *Id.*

The Court therefore finds that payment in the form of an annuity is most appropriate, given that the terms of the SERP contemplate payment of a monthly annuity.

### C. The Availability of YAI's General Assets

The parties agreed in their Joint Pretrial Order that YAI has the financial ability to satisfy a judgment in this case, and the Court has already accepted this as true based on the parties' stipulation. (Dkt. No. 563, App'x A ¶ 43; Trial Tr. at 1057:5-7.) Given this stipulation, the Court declines to enter any further directive as to the availability of YAI's general operating account to satisfy a judgment in this case.

### D. Offsets Based Upon the Four Life Insurance Plans

An additional question raised at trial on which the Court invited comment in post-trial briefing is whether Defendants may claim four life insurance plans as offsets on the amount they owe Plaintiffs.

The life insurance plans in question were taken out in Levy's name and, according to their plain terms or the representations of the insurers, belong solely to him and not to the SERP. (Def. Exs. B, D, F, H; Trial Tr. at 149:15-120:12; *id.* at 236:20-237:4; *id.* at 248:16-249:2.) Courts in New York interpret insurance policies by their unambiguous terms. *See Andy Warhol Found. For Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999). Thus, whether or not Defendants *intended* for the life insurance plans to belong to the SERP or to Levy is neither a relevant and nor timely question. As a result, Defendants may not claim the life insurance plans as offsets on the amount they owe Plaintiffs.

### E. The Life Insurance Plan and Trust ("LIPT")

As Defendants concede (*see* Dkt. No. 597 at 21), based on this Court's holding on summary judgment that Defendants may not renege on payment commitments based on hindsight regret, Defendants may not use the four life insurance policies taken out in Levy's name to reduce any separate obligation to pay out under the LIPT.

## III. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration of the Court's bench ruling is DENIED.

Based on the Court's findings here, together with the sums stipulated to by the parties in their Joint Pretrial Order (Dkt. No. 563 at 31-33), the parties shall calculate the total award due to Plaintiffs and submit a proposed final judgment to the Court on or before May 19, 2017.

The Court will separately address any award of attorneys' fees.

The Clerk of Court is directed to close the motion at Docket Number 607.

SO ORDERED.

Dated: May 9, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge